THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KYLE EDMONDSON, Defendant-Appellant.

First District (1st Division) No. 1—98—0210

Opinion filed March 18, 2002.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant, Kyle Edmondson, was convicted of two counts of first degree murder and two counts of attempted first degree murder. Defendant was sentenced to a term of natural life plus

30 years to be served concurrently in the Illinois Department of Corrections. It is from this judgment of conviction defendant now appeals pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 602 (134 Ill. 2d R. 602).

For the reasons that follow, we reverse and remand.

## BACKGROUND

On November 29, 1994, Andrew Redmond, Vedal McGee and Charles Buford were shot at the corner of Kildare and Cermak Streets in Chicago. Redmond and McGee were killed. The day after the murders, defendant signed a written confession in which he admitted shooting Redmond, McGee and Buford. According to the statement, on the night of the murders, defendant and Anthony Hill (a codefendant not a party to this appeal) were at Hill's house at 2227 South Kildare. The two donned dark clothing and ski masks, armed themselves with guns and went to the street corner where they knew members of the Gangster Disciples street gang were loitering. In the written statement, defendant admits that they wore dark clothing and ski masks so they would not be recognized because they were going to the corner of Kildare and Cermak to shoot Darnell Harris and Darnell's fellow gang members. Darnell Harris was a "regent," which means he was the leader of the Gangster Disciples in that area. The statement further states they were going to shoot Darnell and his Gangster Disciples because in the last few months, Darnell and his gang members had jumped defendant twice and had threatened Hill. Defendant's confession states that when he and Hill reached the corner of Kildare and Cermak, Hill began firing at the gang members. Defendant pulled out his gun and fired one shot. The statement says that defendant did not see any weapons in their hands.

At trial, defendant claimed he acted out of self-defense against the victims, who were the actual aggressors in this case. In support of this defense, defendant presented a significant amount of testimony detailing the harassment and intimidation suffered by him at the hands of Gangster Disciples members, specifically, at the hands of Darnell Harris. He testified as to how he had been tormented and threatened over the course of several months by gang members because he wanted to leave the gang. Defendant testified that on November 29, 1994, he was preparing to attend a party when he learned Harris and other Gangster Disciples were hanging out at the corner. Defendant testified that he and Hill decided to meet Harris to discuss the situation and attempt to reach an agreement. Defendant admitted he carried a gun as a precaution. Defendant testified that as he approached the corner, two Gangster Disciples rushed toward him. Defendant stated he heard gunshots, turned around, and saw one of the gang members exiting a

car with a gun. Defendant testified that he fired the weapon to defend himself.

The judge instructed the jury on the justified use of force as a defense to the charges of first degree murder. The judge denied defense counsel's tender of instructions on second degree murder based on an unreasonable belief in self-defense. Thereafter, the jury returned guilty verdicts as to the murder of Andrew Redmond and Videl McGee and the attempted murders of Charles Buford and Darnell Harris.

On appeal, defendant submits as error at the trial of this cause: (1) the trial court committed reversible error in refusing to tender the jury a second degree murder instruction; (2) the court should have suppressed evidence of drugs, custodial statements and lineup identification as defendant's fourth amendment rights were violated; (3) evidence that defendant was in possession of narcotics was irrelevant and prejudicial; (4) the court committed reversible error in refusing to suppress defendant's oral and written statements as *Miranda* violations; (5) the court committed reversible error in refusing to grant a mistrial for a *Bruton* error (*Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968)); (6) the court committed reversible error in excusing a juror for cause; and (7) defendant was denied a fair trial due to comments made by the State in closing argument.

## DISCUSSION
### Jury Instruction

■ Defendant first argues that the trial court erred in refusing to give an instruction for second degree murder where defendant presented evidence of self-defense and where the jury questioned the meaning of self-defense. We review the trial court's decision regarding jury instructions under an abuse of discretion standard. *People v. Kidd*, 295 Ill. App. 3d 160, 167, 692 N.E.2d 455 (1998).

The jury sent three questions to the trial court asking: (1) What constitutes justification/intent? (2) What is the definition of "imminent" in this case? (3) What is the meaning/justification of "self-defense"? Defendant maintains that pursuant to *People v. Lockett*, 82 Ill. 2d 546, 413 N.E.2d 378 (1980), an instruction for second degree murder should have been given when a self-defense instruction was given to the jury. We agree.

■ A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he believes the circumstances to be such that, if they exist, they would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable. 720 ILCS 5/9—2(a)(2) (West 1994).

Factors that we may consider in determining if a second degree murder instruction is justified include, but are not limited to, the defendant's testimony, intent or motive, the type of wound suffered by the victim, any previous history of violence, any physical contact between the defendant and victim, and the circumstances surrounding the incident. See *People v. Everette*, 141 Ill. 2d 147, 158, 565 N.E.2d 1295 (1990). Applying those factors in the present case, an instruction on second degree murder was warranted.

At trial, the defendant admitted to firing his gun; however, he asserted the affirmative defense of self-defense. The defendant described incidents with the Gangster Disciples in which various gang members threatened defendant during the two months prior to the murders. Defendant portrayed Darnell Harris as one of the aggressors in this case who chased the defendant on several occasions and instructed other gang members to attack the defendant. The defendant testified that Harris did not want him to leave the gang and was trying to force the defendant to stay. Defendant related that Harris, Buford and several other Gangster Disciples beat him up two weeks prior to the murders.

■ Whether the conduct here qualified as first degree murder, second degree murder or self-defense was a question of fact for the jury to resolve. There is sufficient evidence in this case that a trier of fact could believe demonstrates that defendant was not the aggressor. Identifying the initial aggressor is a question of fact for the jury to resolve. *People v. Johnson*, 247 Ill. App. 3d 578, 585, 616 N.E.2d 1026 (1993). When the evidence conflicts on the issue of who initiated the violence, the trial court must instruct the jury on the defendant's justifiable defenses supported by the evidence. *People v. Robinson*, 163 Ill. App. 3d 754, 761, 516 N.E.2d 1292 (1987). Even if inconsistencies exist in defendant's testimony, the defendant is entitled to the benefit of any defense and instruction supported by the entire evidence. *People v. Bratcher*, 63 Ill. 2d 534, 540, 349 N.E.2d 31 (1976).

The trial judge recognized that there were competing theories factually at issue in this case and found the defendant was entitled to an instruction on self-defense because that instruction was supported by the evidence. The submission of the self-defense instruction by the trial judge indicates his determination that the jury could conclude defendant acted with the subjective belief his conduct was in self-defense. There was sufficient evidence in the record to support that determination. However, the refusal to instruct the jury on second degree murder prevented the jury from determining whether defendant's subjective belief that he was justified in self-defense was a reasonable or unreasonable belief. We cannot reconcile the trial court's finding sufficient evidence to warrant a self-defense instruction, and

thereby allowing the jury to consider whether defendant's subjective belief was reasonable, with the trial court's refusal to allow the jury to consider whether that belief was unreasonable.

When the evidence supports giving the jury an instruction on the justifiable use of force in self-defense, then an instruction for second degree murder likewise should be given. *People v. Lockett*, 82 Ill. 2d 546, 552, 413 N.E.2d 378 (1980). In *Lockett*, the court determined that self-defense and voluntary manslaughter (now second degree murder) instructions should be given when any evidence is presented showing the defendant's subjective belief that use of force is necessary. *Lockett*, 82 Ill. 2d at 552. The court noted the judge's duty is to determine if any evidence is presented that the defendant had a subjective belief that use of force is necessary, while it is the duty of the jury to weigh the evidence and determine if the belief existed and if so whether that belief was reasonable or unreasonable. *Lockett*, 82 Ill. 2d at 552-53.

There is a factual dispute as to whether defendant, Buford or another Gangster Disciple was the initial aggressor who set into motion a course of felonious conduct. There is evidence that a jury could believe and find that defendant did not commit first degree murder, but fired the weapon under the unreasonable belief that circumstances justified the use of deadly force and was, therefore, guilty of second degree murder. Therefore, based on the record, including the history of aggression between defendant and the Gangster Disciples, the previous confrontations and the testimony of defendant, there is sufficient evidence of self-defense to warrant an instruction on second degree murder.

Accordingly, we find that the trial court committed reversible error in failing to instruct the jury on second degree murder. Because we concluded on review that remand was warranted, we need not address defendant's claims of trial error. We will, however, address the issues raised that are likely to reoccur on retrial.

### Unlawful Arrest

Defendant argues that he was arrested without probable cause in violation of his fourth amendment rights. We disagree.

■ An arrest without a warrant must be supported by probable cause. U.S. Const., amend. IV; *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020 (1995). " 'Probable cause to arrest exists where the totality of the circumstances known to police officers at the time of arrest are sufficient to warrant a reasonably prudent person to believe that the suspect has committed a crime.' [Citation.]" *People v. Dizon*, 297 Ill. App. 3d 880, 885, 697 N.E.2d 780 (1998). Under the probable

cause standard, " '[e]vidence that will sustain a conviction is not required, but more than mere suspicion is necessary. [Citation.]' " *People v. Kidd*, 175 Ill. 2d 1, 22, 675 N.E.2d 910 (1996), quoting *In re D.G.*, 144 Ill. 2d 404, 412-13, 581 N.E.2d 648 (1991) (Miller, C.J., dissenting).

Defendant claims there was no probable cause to arrest him and he did not even match the description of the suspects. Defendant asserts that he was arrested merely because he was in the company of Hill, one of the offenders for whom probable cause existed. It is true that a person's mere proximity to others suspected of criminal activity does not, without more, give rise to probable cause to arrest. *People v. Drake*, 288 Ill. App. 3d 963, 683 N.E.2d 1215 (1997). However, here the court took note of a number of other facts supporting probable cause to arrest.

■ A witness to the shooting told the police that there were two shooters who had fled into a garage. The witness pointed to the garage. As police officer Vujic approached the garage, he received a radio dispatch describing the shooters as wearing black clothing and black ski masks and being armed. Officer Vujic then observed a man run from the area near the garage toward the house. Officer Vujic and his partner entered the garage and found dark clothing, ski masks, gloves and two guns. The police then went to the house where Hill's father, Charles, opened the door. The police identified themselves and asked Charles Hill who was inside the house. Charles Hill called to his son to come down the stairs. Officer Vujic recognized Hill as the individual he had seen run from the garage area toward the house. The officers placed Hill under arrest. The officers heard footsteps upstairs and proceeded up the stairs where they observed the defendant sitting in an attic room. The police entered the room and noticed the defendant clutching a plastic bag in his hand. Officer Vujic asked the defendant to open his hand and the officer recognized the plastic bag as the type of packaging used for crack cocaine. The defendant was placed under arrest. A review of the record indicates sufficient facts under the totality of the circumstances to support the trial court's finding of probable cause.

### Miranda Rights

The defendant contends that the trial court erred in failing to suppress his written confession because the State failed to show that a *Miranda* warning was given prior to obtaining the oral and written statements of the defendant. The defendant maintains that a police officer informing the defendant that the codefendant was "giving it up" was equivalent to an interrogation. We disagree.

 Whether, and under what circumstances, *Miranda* warnings can become stale was addressed by the Illinois Supreme Court in *People v. Garcia*, 165 Ill. 2d 409, 651 N.E.2d 100 (1995). The *Garcia* court stated that, generally, fresh *Miranda* warnings are not required after the passage of several hours. See 1 W. LaFave & J. Israel, Criminal Procedure § 6.8, at 520 (1984); see also *Stumes v. Solem*, 752 F.2d 317, 321 (8th Cir. 1985). The court acknowledged that this commonsense approach avoids the otherwise ridiculous situation of police officers having to issue *Miranda* warnings prior to each question or after every break in the questioning. The court then stated that the better rule is to require new warnings only in those situations where "a substantial probability exists that warnings given at a previous interrogation are so stale and remote that a substantial possibility exists that the suspect was unaware of his or her constitutional rights at the time subsequent interrogation occurs. [Citations.] Moreover, we hold that the totality of the circumstances should be looked to in determining whether given defendants understand their constitutional rights in post-*Miranda* warning interrogations." *Garcia*, 165 Ill. 2d at 426.

 Here, the totality of the circumstances leads to the conclusion that defendant was aware of his constitutional rights to silence and to an attorney at the time he offered his statement. Just three hours prior to giving his statement, at 9:45 a.m., defendant had received, understood and waived his third set of *Miranda* rights. The defendant was given a *Miranda* warning when he was arrested on November 29, 1994, at approximately 11 p.m. Then, at approximately 3:45 a.m., prior to an interview by a police detective at Area 4 station, the defendant was given a second *Miranda* warning. The defendant was interviewed again at 9:45 a.m. by an assistant State's Attorney and was given a third *Miranda* warning. Thereafter, at approximately 12 noon, the defendant asked to use the bathroom. Officer Vujic escorted the defendant to and from the washroom and upon returning to the interview room, the defendant asked what was going on. Officer Vujic told the defendant that the codefendant was "giving it up." After the defendant was placed back in the interview room, he again called out and told Officer Vujic that he wanted to make a statement. Officer Vujic informed the detective that the defendant wished to make a statement. The detective and the assistant State's Attorney interviewed the defendant at approximately 1 p.m. and memorialized the statement to writing at approximately 2 p.m. The statement was written by the assistant State's Attorney and the defendant signed each page of the statement as well as the *Miranda* waiver form.

We find that the defendant was given sufficient *Miranda* warnings

and the trial court did not err in denying the defendant's motion to suppress his confession.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

COHEN, P.J., and COUSINS, J., concur.