# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Washington*, 2012 IL 110283

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MALVIN WASHINGTON, Appellee. |
| | |
| Docket No. | 110283 |
| Filed | January 20, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When evidence in a first degree murder trial supports a self-defense instruction on justifiable use of force, there must also be an instruction permitting the jury to reduce the offense to second degree murder if it finds defendant unreasonably believed that force was necessary. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Diane G. Cannon, Judge, presiding. |
| | |
| Judgment | Affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Ashley A. Romito, Assistant State's Attorneys, of counsel), for the People. |
| | |
| | Tod M. Urban and Rachel Moran, of Chicago, for appellee. |
| | |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, Malvin Washington, was convicted of two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)) of Marquis Reed and one count of aggravated battery with a firearm (720 ILCS 5/12-4.2 (West 2002)) of Ronald Lee. The circuit court of Cook County merged the counts of first degree murder and sentenced defendant to a term of 55 years in prison on the murder conviction and a consecutive term of 10 years in prison on the conviction for aggravated battery with a firearm. Following the close of evidence and relevant to this appeal, the circuit court instructed the jury on the justifiable use of force in self-defense (720 ILCS 5/7-1 (West 2002)). The court rejected defense counsel's request to also instruct the jury on second degree murder (720 ILCS 5/9-2(a)(2) (West 2002)) and involuntary manslaughter (720 ILCS 5/9-3(a) (West 2002)). Defendant appealed and the appellate court reversed and remanded for a new trial, holding that where the evidence supports the giving of a self-defense instruction, it was an abuse of discretion for the trial court to refuse a defendant's request for a second degree murder instruction. 399 Ill. App. 3d 664. We granted the State leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 2                                BACKGROUND

¶ 3    On March 21, 2004, Antonio Washington was visiting his cousin, Topeka Washington, who was defendant's sister. Antonio was driving a car that belonged to Sharlene Parker, defendant's girlfriend. As Antonio backed out of his parking space, the car was struck by a car driven by Antoine Lee. Both men got out of their cars. Phone calls were made to members of both men's families and soon several people converged on the accident scene. Present were Antoine's mother, Angela Lee; her sister, Yvette Reed; her brother, Donald Lee; and Yvette's son, Marquis Reed. Another group of Antoine's family members arrived separately, including Antoine's uncle, Ronald Lee; LaTanya McGhee; LaTanya's mother, Wanda Cook; and Victor Lovelace, who was a friend of Ronald. Topeka called defendant's girlfriend to tell her of the accident. Defendant answered the phone and he went to the

accident scene. Defendant and Antoine began to argue. At some point, defendant went to his girlfriend's car and retrieved a gun, as he did not want the police to find it. He put the gun in the pocket of his green and black Milwaukee Bucks jacket. Ronald Lee walked up to the two men. Antoine testified that Ronald told defendant to "get the f*** away from my nephew." Topeka joined in the argument. Antoine testified that he decided that he and Ronald should leave because too many people had arrived. Ronald told Antoine, "F*** this s***, let's go." According to Antoine, as they were walking away, he heard two or three gunshots. He turned around and saw fire coming from defendant's pocket.

¶ 4    Antonio Washington claimed that he was dazed after the accident. He claimed a lack of memory concerning the salient events. However, in a statement to police and in his grand jury testimony, Antonio stated that defendant arrived on the scene and demanded that someone pay for the damage to his girlfriend's car. Antonio also stated that the atmosphere was calm, but that the situation escalated. At that point, Topeka "got crazy." Antonio stated that he heard several gunshots.

¶ 5    Ronald Lee testified that he and his family were driving in the area and happened to come upon the accident. He got out of his car and approached defendant and Antoine. Defendant was yelling and "fussing" at Antoine, who appeared frightened. When neither man responded to Ronald's question as to what was going on, Ronald told Antoine to get in his car, that they would leave and call the police about the accident from home. Ronald testified that he pushed Antoine and defendant apart to prevent them from fighting and he and Antoine started to walk away. Ronald testified that Topeka followed them, yelling something about people minding their own business. Ronald told her that this was his business because it involved his nephew. As Ronald continued to walk to his car, he heard shouts of, "He's got a gun," and Ronald turned around to see defendant pointing a gun at him. Ronald tried to run away, but was shot three times. Ronald denied having a gun that day and he also denied telling defendant to "get the f*** away from my nephew" when he first walked up to defendant and Antoine.

¶ 6    Angela Lee testified that when she approached the scene of the accident, defendant and Antoine appeared to be talking calmly. She saw Ronald walk up to them and ask what was going on. Defendant asked Ronald in a normal tone of voice, "Who the f*** are you?" Ronald stated that he was talking to his nephew, not to defendant. When Ronald and Antoine started to leave, Angela saw defendant shoot a gun in their direction. She ducked and fell to the ground. She did not see anyone other than defendant with a gun. Angela testified that there was no physical confrontation between defendant and Ronald prior to the shooting.

¶ 7    Donald Lee testified that he saw Antoine arguing with a man who was pushing Antoine with his body. Ronald walked up and stepped between Antoine and the man and pushed them apart. Ronald became involved in the argument, which was "very heated." Donald did not see any weapon in Ronald's hands. He saw the man pull a gun from his side. Donald ran when he heard gunshots; he did not have a gun but would have used it if he had. Later, Donald saw his sister, Yvette, sitting on the curb, holding her son Marquis, who was bleeding.

¶ 8    Yvette Reed testified that she was at Angela's home when Angela got a call from

Antoine about a car accident. She, Angela, Donald, and Marquis left to go to the accident scene. She stayed in the car, while the others got out to see what was happening. Yvette heard gunshots. She got out of the car and saw Marquis coming toward her with blood on his mouth.

¶ 9    LaTanya McGhee was with Ronald when he walked up to Antoine and defendant. Defendant was yelling at Antoine. Ronald told Antoine to get in the car and call the police. Defendant began to argue with Ronald. LaTanya denied seeing Ronald push or choke defendant or hear him say, "Get the f*** away from my nephew." A woman approached Ronald and told him to mind his own business. Ronald told the woman that this was his business. LaTanya saw defendant remove a gun from his pocket and shoot three times at Ronald. Everyone was running and screaming.

¶ 10    Wanda Cook saw that a crowd had gathered at the accident scene and that people were arguing. Ronald was arguing with a man in a black hoodie. The man pulled out a gun. Ronald ran away and she heard three or four gunshots. Ronald fell to the ground at the door of their car. Wanda stated that Ronald did not have a gun.

¶ 11    Forensics testing showed that all bullets and casings recovered from the scene were fired from the same gun. The bullet that killed Marquis had passed through another object or person before hitting Marquis.

¶ 12    Topeka testified for the defense that when defendant initially arrived on the scene he was calm. Both he and Antoine went to their cars. When they came back, Ronald walked up. Ronald was angry and things got out of hand. Ronald asked defendant if he was "F***ing" with his nephew. Defendant stated that he was not. Ronald charged at defendant and pushed him. Topeka asked Ronald why he was acting like that and Ronald told her to shut up or he would slap her. Angela Lee grabbed Ronald to try to calm him down. Ronald broke free and charged at defendant, trying to choke him. Topeka heard a gunshot. She ran and when she looked back, she saw Donald Lee running just behind her with a gun that appeared to be jammed. She did not know if Donald fired any shots. Topeka testified that she did not talk to the police at any time in connection with the incident.

¶ 13    Finola Horad testified that she was at her neighbor's house when she heard between three and five gunshots. At first, she dropped to the floor but quickly got up and went to the door because her daughters were walking home from the store. She saw a man standing in the street with a gun in his hand. She could not see his face and could not tell his race or age. He was wearing a black hoodie and jeans. A man was lying on the ground near him.

¶ 14    Defendant testified in his own behalf. After he retrieved his gun from the car, he started to tell Topeka that he was going to put the gun in her house. Ronald came up behind him, grabbed him by the neck and pushed him. According to defendant Ronald told him to get the "f***" away from Antoine. Defendant told Ronald not to put his hands on him. Ronald started shouting and cursing. According to defendant, Topeka tried to calm the situation and Angela Lee was trying to hold Ronald back. However, Ronald broke loose and grabbed defendant by the neck and they wrestled with each other. After defendant pushed Ronald back, defendant saw Ronald reach for his waistband and pull out a gun. Defendant described the gun as a revolver with a wooden handle. Defendant testified that he was afraid for his life

and had no time to think. He reached for his gun and shot at Ronald. Ronald lunged at him again and defendant shot him twice more. Defendant stated he heard more gunshots from across the street and he started to run away. While doing so, defendant saw Donald Lee chasing him with a gun. It appeared the gun had jammed. Defendant ran to a friend's house. He was arrested six months later.

¶ 15    At the jury instruction conference, defense counsel requested an instruction on self-defense. The trial court denied counsel's request for instructions on second degree murder and involuntary manslaughter. The court determined that a question must exist as to whether the defendant's subjective belief in the need for the use of force is reasonable and that there was no evidence in the instant case that defendant had an unreasonable belief. As stated, the jury convicted defendant.

¶ 16    Defendant appealed, arguing, *inter alia*, that the trial court erred in refusing to give the jury an instruction on second degree murder. The appellate court reversed and remanded for a new trial, finding that the trial court abused its discretion in refusing the tendered instruction.

¶ 17                                   ANALYSIS
¶ 18                              I. Standard of Review
¶ 19    The question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to *de novo* review. *People v. Everette*, 141 Ill. 2d 147, 157 (1990).

¶ 20                                       II
¶ 21    The State argues that the appellate court erred in reversing defendant's conviction and remanding for a new trial. In finding trial court error for failure to give a second degree murder instruction, the appellate court relied on this court's decision in *People v. Lockett*, 82 Ill. 2d 546 (1980). Initially, we note that at the time *Lockett* was decided, what is now second degree murder was called voluntary manslaughter. In 1986, the legislature enacted Public Act 84-1450 (Pub. Act 84-1450 (eff. July 1, 1987) (amending section 9-2 of the Criminal Code of 1961 (see Ill. Rev. Stat. 1985, ch. 38, ¶ 9-2)). The Act renamed the offense of murder to first degree murder. Compare Ill. Rev. Stat. 1985, ch. 38, ¶ 9-1, with Ill. Rev. Stat. 1987, ch. 38, ¶ 9-1. The Act also abolished the offense of voluntary manslaughter and substituted for it the offense of second degree murder.

¶ 22    In *Lockett*, the defendant and his friends were driving in the defendant's car when they came upon the victim, an older man who was pulling a cart filled with glass bottles. The defendant and his companions became involved in an argument with the victim concerning his cart blocking one lane of the street. The victim approached the passenger side of the car and pulled a smoking pipe out of his pocket. When the defendant and his friends began to laugh, the victim pointed to his cart and said he had something in there to make them move. He then started to pull a brown object out of the cart. Someone in the car yelled for the defendant to watch out. The defendant reached for his gun and shot at the victim, believing

the victim had a gun in his hand. When the police got to the scene, the victim was lying dead in the street. No gun was found but an empty whiskey bottle was lying near the body. The trial court gave the jury an instruction on self-defense, but refused a tendered instruction on voluntary manslaughter. The jury convicted the defendant of murder. The appellate court reversed the conviction and remanded for a new trial. *Lockett*, 82 Ill. 2d at 548.

¶ 23        This court affirmed the appellate court, rejecting the State's argument that because the defendant could have had a reasonable but mistaken belief in self-defense, he was not entitled to an instruction on voluntary manslaughter based on an unreasonable belief in self-defense. The court noted with approval several appellate court cases which held that if the evidence supports a self-defense instruction, it will also support a voluntary manslaughter instruction. This court observed that when a jury is given an instruction on self-defense, the jury can conclude one of three things: (1) the defendant did not have a subjective belief that use of force was necessary; (2) the defendant had a subjective belief that use of force was necessary and that belief was reasonable; or (3) the defendant had a subjective belief that use of force was necessary and that belief was unreasonable. Therefore, self-defense and voluntary manslaughter instructions should be given when the evidence shows that the defendant had a subjective belief that use of force was necessary. This court noted that it is for the jury to determine whether that subjective belief was reasonable:

> "It is not the province of the judge to weigh the evidence and decide if defendant's subjective belief was reasonable or unreasonable. The judge's duty is to determine if any evidence is presented that the defendant had a subjective belief. We can conceive of no circumstance when a judge could determine, as a matter of law, that a jury could find the defendant had a reasonable subjective belief the killing was justified, but that the jury could not find the defendant's subjective belief was unreasonable. So long as some evidence is presented from which a jury could conclude that defendant had a subjective belief, the jury should determine if the belief existed and, if so, whether that belief was reasonable or unreasonable. Consequently, we hold that when the evidence supports submitting an instruction on justifiable use of force, a tendered [instruction] on voluntary manslaughter also should be given." *Id.* at 553.

¶ 24        The court noted the record in *Lockett* supported the trial judge's determination that the jury could have found that the defendant had a subjective belief in the need for the use of force. Thus, a voluntary manslaughter instruction on unreasonable belief in the use of force should have been given, along with the self-defense instruction. *Id.*

¶ 25        The State argues that *Lockett* did not announce a rule that a second degree murder instruction must be given as a mandatory counterpart to a self-defense instruction in all murder cases. In fact, the State argues, this was not even the issue before this court in *Lockett*. Rather, the State argued there that because the defendant's defense theory was that he acted on a reasonable belief in self-defense, he was therefore not entitled to an instruction on voluntary manslaughter based on an unreasonable belief. This court rejected that argument, stating that a defense based upon self-defense does not preclude a voluntary manslaughter instruction in a murder prosecution. The court went on to say that it is the settled rule in murder cases that if there is evidence in the record which, if believed by a jury,

would reduce the offense to manslaughter, an instruction defining manslaughter should be given. Further, the court continued, it is equally well settled that such an instruction should not be given if the evidence clearly shows that the crime was murder and there is no evidence from which a jury might conclude that the defendant was guilty of manslaughter, rather than murder. *Id.* at 550-51.

¶ 26    The State emphasizes this last passage in *Lockett* in arguing that *Lockett* did not mandate the giving of a second degree murder instruction whenever a self-defense instruction is given because the *Lockett* court recognized that jury instructions must be supported by some evidence in the record. The State views it as inconsistent for this court to cite such a well-settled proposition of law, but then establish a mandatory rule that a second degree murder instruction must be given in all cases in conjunction with a self-defense instruction regardless of whether the evidence supports the second degree murder instruction. The State argues that, given the language and background of *Lockett* and the "tenor" of the law at that time, it is likely that *Lockett* was meant, at least in part, to convey a clear message to the circuit courts that they should not hesitate to tender jury instructions that are supported by the evidence even if the instructions are inconsistent with the defendant's own testimony or the primary theory of the defense. Thus, according to the State, rather than announcing a mandatory rule, *Lockett* merely reiterated that where the record provides some evidence that could mitigate a crime from first degree murder to second degree murder, a second degree murder instruction should be given regardless of whether the defendant chose an alternative theory of defense.

¶ 27    The State further argues that *Lockett* itself noted that the reason the trial court in that case refused the voluntary manslaughter instruction was not because the record lacked evidence to support the instruction, but because the trial court concluded that self-defense is seldom compatible with voluntary manslaughter. The trial court also made certain comments which suggested a lack of belief in the defendant's testimony that he thought the victim was pulling a gun when he shot him. Thus, the State argues, the trial court actually identified evidence in the record to support the unreasonableness of the defendant's belief, but still refused to give the instruction. The State also points to "permissive" language in *Lockett*, *i.e.*, that "a self-defense and a voluntary manslaughter instruction *should* be given when any evidence is presented showing the defendant's subjective belief that use of force was necessary." (Emphasis added.) *Id.* at 552. Significantly absent, argues the State, is any wording describing an unequivocal command such as the words "requirement," "mandatory," or "must" would convey.

¶ 28    Defendant, on the other hand, argues that *Lockett* did establish a mandatory rule and that all but a few cases since then have followed that rule. Defendant argues that *Lockett* neither used language of limitation nor gave any indication that it was announcing anything other than a broadly applicable *per se* rule. He emphasizes language in *Lockett* in which this court stated that it could "conceive of no circumstance when a judge could determine, as a matter of law, that a jury could find the defendant had a reasonable subjective belief the killing was justified, but that the jury could not find the defendant's subjective belief was unreasonable." *Id*. at 553.

¶ 29    Reading *Lockett* as a whole convinces us that this court intended to set forth a mandatory

requirement. This court stated in *Lockett* that "we *hold* that when the evidence supports submitting an instruction on justifiable use of force, a tendered IPI Criminal No. 7.05 on voluntary manslaughter also should be given." (Emphasis added.) *Id.* at 553. This holding came immediately after the court stated that it was not the province of the judge to weigh the evidence and decide whether the defendant's belief was reasonable or unreasonable, and that the court could conceive of no circumstance when a judge could determine as a matter of law that a jury could find a defendant's subjective belief was reasonable but not find that the belief was unreasonable. *Id.* at 553.

¶ 30    Further, *Lockett* is not the only case from this court to hold that a second degree murder instruction should be given when the evidence supports the giving of a self-defense instruction. Two years after *Lockett*, this court decided *People v. O'Neal*, 104 Ill. 2d 399 (1984). There, the defendant was charged with murder, rape, and other offenses. It was alleged that he and the murder victim, Hendricks, kidnapped a woman and sexually assaulted her in her car. The woman testified that after the defendant finished assaulting her, Hendricks removed his jacket and got on top of her. The woman further testified that the defendant then shot Hendricks in the head. In contrast, the defendant testified that while Hendricks was on top of the woman, the defendant reached for the gun in Hendricks' jacket pocket. Hendricks then grabbed the defendant and tried to pull him into the backseat of the car. The defendant testified that he shot Hendricks in self-defense. The defendant stated that he was afraid of Hendricks due to Hendricks forcing the defendant to commit criminal offenses and making threats against the defendant and his family. The trial court gave the jury an instruction on self-defense, but refused to give an instruction on voluntary manslaughter based on unreasonable belief in the need to use deadly force. The issue before this court was whether the trial court erred when it refused to instruct the jury on voluntary manslaughter. This court noted that *Lockett* "held that where there is evidence in the record to support a self-defense instruction, a voluntary-manslaughter instruction must also be given if tendered by defendant." *Id.* at 405. The *O'Neal* court concluded, after reviewing the record, that it agreed with the trial court that there was sufficient evidence to submit a self-defense instruction to the jury. Consequently, the court stated, the tendered instructions on voluntary manslaughter should have also been given. The court further held that the error was not harmless, noting that the finding by the trial court of sufficient evidence in the record of the defendant's subjective belief in the necessity for the use of force to warrant a self-defense instruction foreclosed any finding that the evidence of murder was overwhelming. Consequently, the refusal to give the voluntary manslaughter instruction was not harmless error. *Id.* at 406, 409.

¶ 31    More recently, *People v. Jeffries*, 164 Ill. 2d 104 (1995), addressed issues surrounding the constitutionality of the second degree murder statute. In that consolidated case, the defendants, Jeffries and Newburn, were convicted of first degree murder. Jeffries was accused of the stabbing death of his former girlfriend. The victim's aunt, who witnessed the stabbing, testified that Jeffries broke into the victim's residence and began repeatedly stabbing the victim with a knife. When the victim ran outside and began screaming for help, Jeffries followed her and continued stabbing her. Jeffries testified that he stabbed the victim in self-defense and that two weeks earlier, the victim had shot him in the arm. When he went to the victim's home to retrieve his belongings, she brandished a knife at him and threatened

-8-

to kill him. They struggled over the knife and when Jeffries gained control of the knife, he repeatedly stabbed the victim. *Id*. at 108.

¶ 32    In Newburn's case, he and the victim engaged in two fist fights. The victim then left his apartment and went across the street to the liquor store. The victim's roommate testified that she looked out the window and saw Newburn, accompanied by another man, approaching the apartment with a baseball bat. They chased the victim out of the liquor store and Newburn struck the victim in the leg with the bat. The victim ran toward the apartment building. Newburn continued his pursuit of the victim and struck him again in the arm and leg. He then bludgeoned the victim in the head with the bat three times and ran away. The roommate and another witness testified that no gun was involved in any of the confrontations between the victim and Newburn. However, Newburn testified that the victim had a gun during the final confrontation prior to the fatal incident. Newburn testified that the victim began to chase him with the gun. After evading the victim, Newburn got a baseball bat and walked to the liquor store. When the victim emerged from the store, Newburn swung the bat at him and struck him in the arm. The victim then pulled his gun and Newburn, in trying to knock the gun out of the victim's hand, struck him in the head. When the victim dropped the gun, the roommate picked it up and Newburn fled the scene. We note the trial court gave a second degree murder instruction in Newburn's case. *Id*. at 109-10.

¶ 33    Pertinent to the instant case, the defendants in *Jeffries* argued that under the second degree murder statute, the accused is required to prove that he had an unreasonable belief in self-defense, which puts the accused in the untenable position of arguing that he had a reasonable belief in self-defense to obtain an acquittal and, at the same time, arguing that his belief was unreasonable to obtain a second degree murder conviction. This court noted that the defendants, in essence, were arguing that the "but his belief is unreasonable" language in the second degree murder statute is a part of the requisite mitigation and that the accused bears the burden of proving it. This court rejected that argument as a misconception of what actually happens at a murder trial. Using the example of Newburn's trial, the court noted that the jury first evaluated all the evidence and concluded that Newburn had killed the victim without lawful justification. The jury then reevaluated the evidence to determine whether, although legally unjustified, Newburn was acting with the unreasonable belief that the circumstances justified his use of deadly force. The jury found that Newburn had not proven the mitigating factor of imperfect self-defense. Based upon this example, this court concluded that a defendant is not required to argue that his belief was unreasonable. Even if the jury found Newburn's belief was not objectively reasonable, he attempted to prove that he had an actual belief in the necessity of self-defense by presenting evidence that he had such a belief and that the belief was reasonable. *Id.* at 124-26.

¶ 34    Finally, *Jeffries* clarified the burdens of proof under first degree murder and second degree murder. The court noted that once an affirmative defense has been raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue as well as the elements of first degree murder. After the State establishes the elements of first degree murder, the trier of fact next addresses the issue of lawful justification. In connection with discussing the instruction of the jury on self-defense, this court cited *Lockett* in a footnote. The footnote cited *Lockett*'s holding that self-defense and second degree murder

instructions should be given when any evidence is presented showing the defendant's subjective belief that the use of force was necessary. *Id.* at 127.

¶ 35    *Jeffries* noted that to obtain a jury instruction on self-defense, a defendant must establish some evidence of six factors: (1) force is threatened against a person, (2) the person is not the aggressor, (3) the danger of harm was imminent, (4) the threatened force was unlawful, (5) the person actually and subjectively believed a danger existed that required the use of the force applied, and (6) the person's beliefs were objectively reasonable. This court observed that a defendant's belief was not necessarily an element that the State was required to disprove in defeating a claim of self-defense. Rather, the question of the reasonableness of a defendant's belief is merely one of six factors that the State could choose to rebut. In summarizing, this court stated the following:

> "[W]hen a defendant is found guilty of second degree murder, the trier of fact has, in essence, concluded that the evidence that the defendant has offered was not sufficient to support his claim of self-defense. The defendant, however, has proven by a preponderance of the evidence the existence of a mitigating factor sufficient to reduce the offense of murder to second degree murder. The defendant is not compelled to show that he had an unreasonable belief in the necessity for the use of force to obtain a second degree murder conviction. Rather, after the defendant has presented the best evidence for his defense, the trier of fact has concluded that the evidence only supports a finding of second degree murder and not absolute justification for the defendant's actions." *Id.* at 129.

¶ 36    The State argues that *Jeffries* is of little applicability here because the primary issue in that case was the constitutionality of the second degree murder statute and that one of the defendants there, Newburn, did receive a second degree murder instruction. While the State is factually correct in its statements, we disagree with its conclusion. The *Jeffries* defendants argued that they were required by the second degree murder statute to prove an unreasonable belief in the need to use force in self-defense. This court rejected that argument. The State argues here that there must be some evidence in the record of an unreasonable belief in self-defense to warrant a jury instruction on second degree murder, or that at the very least, the reasonableness of the defendant's subjective belief must be actively in question. *Jeffries* suggests otherwise. A defendant who claims self-defense puts forth his best evidence on that affirmative defense. As this court stated in *Lockett*, it is the trial court's function to determine whether there is evidence in the record of a subjective belief in the need to use force in self-defense. If so, the trial court should instruct the jury on self-defense and on second degree murder. This is so because, as noted by this court in *Lockett*, it is the function of the jury to determine whether the subjective belief existed and whether it was objectively reasonable or unreasonable. In addition, *Jeffries* cited *Lockett* in a footnote as it was discussing the instruction of a jury on the issue of self-defense and the parties' respective burdens of proof on the issues of lawful justification. *Id.* at 127-28.

¶ 37    We find *Jeffries* relevant to the question of whether a second degree murder instruction must be given when the evidence supports the giving of an instruction on the justifiable use of force. It is noteworthy that *Jeffries* found it unnecessary for a defendant who asserts self-defense to also produce evidence that his subjective belief in the need for the use of force

-10-

was unreasonable in order to obtain a jury instruction on second degree murder. It is enough, said *Jeffries*, to produce evidence of an actual belief in the need for the use of force in self-defense. From that evidence, if the jury finds the defendant had a subjective belief, it may find the belief to be objectively reasonable or objectively unreasonable. Consequently, we conclude that *Jeffries* supports the holding of *Lockett* that if there is evidence in the record to support the giving of an instruction on self-defense, that same evidence will also support the giving of a second degree murder instruction and such an instruction should be given.

¶ 38     In further support of its argument that *Lockett* did not intend to require a second degree murder instruction as a mandatory counterpart to a self-defense instruction, the State claims that the appellate court cases cited with approval by *Lockett* were based upon factual situations in which there was testimony that the defendants *thought* their victims were armed with deadly weapons. The State argues that it was in this vein that *Lockett* explained that it was for the trial court to determine whether there was any evidence in the record to support a belief in self-defense but for the jury to determine whether that belief was reasonable.

¶ 39     *Lockett* cited three cases. The first case cited was *People v. Wright*, 24 Ill. App. 3d 536 (1974). There, the decedent and the defendant had an altercation stemming from vehicles blocking the street. During the altercation, the defendant shot the decedent. Several witnesses testified, with varying accounts of what transpired. Some testified that the decedent was the aggressor and others that the defendant was the aggressor. The trial court gave the jury an instruction on self-defense. On appeal from his murder conviction, the defendant argued, *inter alia*, that the trial court erred in giving certain jury instructions and in failing to give an instruction on the unreasonable belief in use of force in self-defense. The appellate court found that the trial court had given contradictory instructions on self-defense and murder. The court also concluded that because the trial court gave an instruction on self-defense, it should also have given a voluntary manslaughter instruction on an unreasonable belief in the justifiable use of force. In doing so, the appellate court noted that when the evidence supports the giving of an instruction on the justifiable use of force, the jury has three alternatives to consider, *i.e.*, murder, self-defense, and unreasonable belief in the need for the use of force. *Id.* at 541-42.

¶ 40     The second case relied on by the *Lockett* court is *People v. Zertuche*, 5 Ill. App. 3d 303 (1972). There, the defendant was charged with the murder of his former roommate. He admitted that he shot the victim, but claimed self-defense. The defendant testified that the roommate owed him money and when the defendant approached him about payment, the victim refused and called him names. The defendant and the victim had two additional confrontations during which the victim again verbally attacked the defendant. On each of these occasions, the defendant became frightened and left. After the defendant left the scene of the final incident, he heard the door slam behind him. When he turned around, he saw the victim coming toward him as if to tackle him. Defendant pulled out a gun he had been carrying for protection from the victim and shot him. The defendant also testified that it was the victim's habit to carry a gun and that he was taller, heavier, and younger than the defendant. There were no eyewitnesses to the shooting. The trial court instructed the jury on self-defense but refused to give a voluntary manslaughter instruction on unreasonable belief. The appellate court reversed and remanded for a new trial. The court noted it seemed

inconsistent of the trial court to find the existence of evidence from which the jury could conclude that the defendant had a reasonable belief in the need to use deadly force in self-defense, and at the same time find there to be no evidence showing that the defendant had an unreasonable belief in the need for the use of force. The court thus held that since the self-defense instruction had been given, the voluntary manslaughter instruction should also have been given. *Id.* at 306.

¶ 41    The third case cited by *Lockett* was *People v. Johnson*, 1 Ill. App. 3d 433 (1971), in which the victim was sleeping on a couch. The defendant walked into the room and ordered the victim to get up and leave. The sole eyewitness testified that the victim stood up and three shots were fired. The defendant left the house, but returned when police arrived and surrendered his weapon. The defendant testified that when he awakened the victim, he jumped up with a funny look in his eyes. The defendant knew the victim carried a knife and he was afraid of the victim because the victim had previously broken a woman's leg with an iron pipe. According to the defendant, the victim advanced toward him and threatened to beat the defendant. The defendant then fired his gun when he was unable to run away. The trial court gave the jury an instruction on the use of force in self-defense; however, the court refused to give a voluntary manslaughter instruction. The appellate court reversed and remanded, noting that when the trial court determined that the evidence justified the giving of an instruction on self-defense, there are three alternatives for the jury's consideration, *i.e.*, murder, the use of force was justified, or that while the defendant may have believed that the use of force was necessary, that belief was unreasonable. It was for the jury to make a choice among the several offenses disclosed by the evidence. *Id.* at 435.

¶ 42    The State attempts to distinguish these cases from the instant case by noting that in *Wright*, *Zertuche*, and *Johnson*, the defendants only *thought* that their victims were armed with deadly weapons. Here, in contrast, defendant testified that he *saw* Ronald pull a revolver out of his pocket. We fail to see the distinction. The defendants in the three cases cited by *Lockett* believed their victims were armed with a deadly weapon. Defendant here testified that he saw Ronald pull a gun. Since no weapon was found, the trier of fact in this case, if instructed properly, could determine from the evidence that defendant was mistaken and that his belief in the need for self-defense was unreasonable. As *Lockett* noted, this was a question for the jury to resolve, not the trial court.

¶ 43    The State argues that giving *Lockett* a mandatory interpretation is contrary to the basic principle of law that whether a defendant is entitled to a jury instruction on an affirmative defense depends upon whether there is any evidence in the record to support that defense. We agree that it is well settled that a defendant is only entitled to a jury instruction on an affirmative defense if there is some evidence, however slight, in the record to support that defense. See *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). However, when the trial court gives an instruction on the justifiable use of force, the court has determined that the record contains evidence of the defendant's subjective belief that the use of force was necessary to defend himself. As *Lockett* noted, it is not the trial judge's role to weigh the evidence and decide whether that belief was reasonable or unreasonable. *Lockett*, 82 Ill. 2d at 553. The State's argument assumes that there will be instances in which, as a matter of law, the defendant could not have had an unreasonable belief in the need to use force in self-defense.

-12-

In such a case, the State reasons, a second degree murder instruction would not be supported by the evidence and should not be given. The State argues that *Lockett* did not address the situation presented in the instant case where the only question is whether the factual scenario that the defendant alleges occurred actually took place. The State cites two appellate court cases in support, *People v. Anderson*, 266 Ill. App. 3d 947 (1994), and *People v. Billups*, 404 Ill. App. 3d 1 (2010).

¶ 44 *Anderson* interpreted *Lockett* as holding only that a second degree murder instruction must be given when there is a question as to the reasonableness of a defendant's subjective belief. In *Anderson*, the defendant testified that the victim threatened him, pointed a gun at him, and the gun went off during the ensuing struggle. Other witnesses testified there was no physical altercation and that the defendant walked up to the victim and shot him. Thus, according to the appellate court, there was no question concerning whether the defendant's subjective belief in the use of force was unreasonable. *Anderson*, 266 Ill. App. 3d at 951.

¶ 45 A similar situation existed in *Billups*, where the defendant claimed that the victim was attempting to rob him when he shot the victim in self-defense. A third man present during the incident testified that the defendant said he had the gun all along. This man testified that the defendant shot the victim within seconds of exiting a van in which the three men were riding. Under these circumstances, the appellate court found the defendant's claim to be one of "perfect self-defense," *i.e.*, if the jury believed the defendant's version of the facts, they must find the defendant not guilty by reason of self-defense. In such circumstances, the court concluded, there is no issue concerning the reasonableness of the defendant's belief in the need to use force to defend himself. Thus, the appellate court found there was no evidence supporting the giving of a second degree murder instruction in *Billups*, 404 Ill. App. 3d at 9-10. The *Billups* court declined to read *Lockett* as changing well-settled law that the trial court's exercise of discretion as to the instructions to give the jury depends upon that court's assessment of whether some evidence exists in the record that, if believed by the jury, would permit a conviction for second degree murder. *Id.* at 11.

¶ 46 The appellate court in the instant case found the holding in *Anderson* to be an aberration and disagreed with that case's conclusion that *Lockett* should be limited to situations where a defendant's subjective belief is actively in question. The court further held that the trial court's error in this case was not harmless because the record contains evidence that defendant acted in either self-defense or with an unreasonable belief in the need for the use of lethal force. 399 Ill. App. 3d at 680-81.

¶ 47 The *Anderson* court misrepresented the holding of *Lockett* when it said:

"Rather, *Lockett* held that self-defense and voluntary manslaughter instructions should be given when any evidence is presented showing the defendant's subjective belief that deadly use of force was necessary. *A question must exist, however, as to whether that subjective belief is reasonable, resulting in a verdict of not guilty, or unreasonable, resulting in a verdict of voluntary manslaughter.*" (Emphasis added.) *Anderson*, 266 Ill. App. 3d at 950-51.

¶ 48 *Lockett* did not hold or even imply that a question must exist as to whether the defendant's subjective belief was reasonable or unreasonable. Instead, *Lockett* held that this

-13-

was a question for the fact finder to determine. The *Anderson* court tried to link *Lockett*'s holding to the facts of that case and found that in *Lockett* the defendant's subjective belief was clearly in question. The language of *Lockett*, however, does not lend itself to this interpretation. Nowhere in its opinion did this court condition its holding on the facts of the case before it. As *Lockett*, *O'Neal*, and *Jeffries* made clear, it is the existence of the defendant's subjective belief that the evidence must show. It is for the jury to weigh the evidence and determine whether that subjective belief existed and whether it was objectively reasonable or unreasonable.

¶ 49    The principles expressed in *Lockett* have been applied by our appellate court in the three decades since *Lockett* was decided. For example, in *People v. Russell*, 215 Ill. App. 3d 8 (1991), the appellate court applied *Lockett* in a situation where the trial court had given the jury an instruction on second degree murder but refused to instruct the jury on self-defense. There, the defendant was convicted of second degree murder. He believed the victim, his half-brother, had stolen some of his guns. The victim was involved with a group of people whom the defendant considered to be dangerous. After his guns were stolen, the defendant began wearing a bulletproof vest. He was wearing the vest and carrying a gun when he confronted the victim and his friends about the stolen guns. The defendant asked the group to put their hands in the air because he believed they were armed. The defendant testified that the victim started to turn to his right and the defendant saw a gun in his hand. The victim swung the gun in the defendant's direction and the defendant raised his rifle and fired, killing the victim. Afterward, one of the men with the victim threw his gun under a car and took a gun from the victim's body and threw it under the car as well. *Id.* at 10-11.

¶ 50    The appellate court noted that this court held in *Lockett* that if the evidence supports a self-defense instruction, it will also support a second degree murder instruction. The court further noted that *Lockett* had been followed since then. Although *Russell* involved the converse of the situation in *Lockett*, the *Russell* court found the reasoning of *Lockett* to still be applicable. In fact, the court noted that the State in *Russell* did not seriously contest the basic proposition that the jury should be instructed both as to self-defense and second degree murder if evidence is produced that would establish a subjective belief in the use of force in the defendant's mind. Rather, the trial court had refused to give the jury instruction on self-defense because it believed the defendant to be the initial aggressor. The appellate court found that the evidence would support a finding either way on that issue. Thus, the instruction should have been given. *Id.* at 11-13.

¶ 51    *People v. Edmondson*, 328 Ill. App. 3d 661 (2002), involved a gang shooting. The defendant was convicted of first degree murder for killing two gang members. The defendant gave conflicting versions of events in a written confession and in his trial testimony. At trial, he claimed he acted out of self-defense, detailing a months-long campaign of harassment and intimidation against him by members of the gang. In his confession to police, he stated that he and another man donned dark clothing and ski masks and went to a certain street corner with the intent of shooting members of the gang. Once there, the defendant and his companion started shooting at the gang members. The defendant's confession stated that he did not see any weapons in the gang members' hands. At the trial, the defendant testified that he learned that the gang members were hanging out at a street corner. He and his companion

decided to meet them to discuss the situation and try to reach an agreement. As they reached the street corner, members of the gang rushed at them and the defendant heard gunshots. He turned around and saw one of the gang members exiting a car with a gun. The defendant testified that he fired his gun in self-defense. The trial court instructed the jury on self-defense; however, the court denied defense counsel's tender of instructions on second degree murder based on an unreasonable belief in self-defense. *Id.* at 663-64.

¶ 52    On appeal, the defendant argued that this court's decision in *Lockett* required the giving of a second degree murder instruction once the trial court determined that the evidence supported the giving of a self-defense instruction. The appellate court agreed with the defendant's contention. The court noted the factors to be considered in determining whether a second degree murder instruction is warranted and applied those factors in light of the evidence. The court noted that when the evidence conflicts on the issue of who initiated the violence, the trial court must instruct the jury on the defendant's justifiable defenses supported by the evidence. This is true even if inconsistencies exist in the defendant's testimony. *Id.* at 664-65.

¶ 53    The *Edmondson* court further observed:

> "The trial judge recognized that there were competing theories factually at issue in this case and found the defendant was entitled to an instruction on self-defense because that instruction was supported by the evidence. The submission of the self-defense instruction by the trial judge indicates his determination that the jury could conclude defendant acted with the subjective belief his conduct was in self-defense. There was sufficient evidence in the record to support that determination. However, the refusal to instruct the jury on second degree murder prevented the jury from determining whether defendant's subjective belief that he was justified in self-defense was a reasonable or unreasonable belief. We cannot reconcile the trial court's finding sufficient evidence to warrant a self-defense instruction, and thereby allowing the jury to consider whether defendant's subjective belief was reasonable, with the trial court's refusal to allow the jury to consider whether that belief was unreasonable." *Id.* at 665-66.

¶ 54    Citing *Lockett*, the *Edmondson* court noted that when the evidence supports giving the jury an instruction on the justifiable use of force in self-defense, then an instruction for second degree murder should likewise be given.

¶ 55    Other cases also have applied the principles of *Lockett*. See, *e.g.*, *People v. Luckett*, 339 Ill. App. 3d 93, 105-06 (2003); *People v. Toney*, 337 Ill. App. 3d 122, 140-41 (2003).

¶ 56    We today reiterate *Lockett*'s holding that when the evidence supports the giving of a jury instruction on self-defense, an instruction on second degree murder must be given as a mandatory counterpart. A failure to do so deprives the jury of the ability to make a factual determination as to whether the defendant had a subjective belief in the necessity for the use of force in self-defense but that belief was unreasonable. Our holding applies only in cases, such as *Lockett* and the instant case, where the trial court has determined that the giving of an instruction on self-defense is warranted and the defendant requests the giving of a second degree murder instruction.

¶ 57                                                III

¶ 58          The State argues that any error in refusing to give a second degree murder instruction in this case was harmless because the evidence of defendant's guilt of first degree murder was overwhelming. Defendant argues that the instructional error here is not amenable to harmless-error analysis. The State counters that accepting defendant's contention would directly contradict this court's previous holding that automatic reversal is mandated only for those errors that have already been defined as structural errors by the United States Supreme Court. See *People v. Thompson*, 238 Ill. 2d 598, 608-09 (2010).

¶ 59          We agree with the State that the failure by a trial court to instruct the jury on second degree murder where the court has given an instruction on self-defense is not subject to automatic reversal. Automatic reversal is only required where the error is deemed "structural," *i.e.*, a systemic error that serves to erode the integrity of the judicial process and undermine the fairness of a trial. *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009). The category of structural errors is very limited. In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court considered whether a jury instruction that omitted an element of the offense constituted structural error. The Court found that it did not, noting that such errors are those that affect the framework within which a trial proceeds, rather than simply an error in the trial process itself. Such errors, the Court stated, deprive defendants of basic protections without which a criminal trial cannot reliably serve its function to determine guilt or innocence. Errors that the Court has found to be structural include the complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of the right of self-representation at trial, denial of a public trial, and defective reasonable doubt instructions. *Id.* at 8-9.

¶ 60          In contrast, instructional errors are deemed harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed. *People v. Pomykala*, 203 Ill. 2d 198, 210 (2003). The State argues that a second degree murder instruction would not have changed the jury's verdict because defendant's "fantastical tale of self-defense" was (1) utterly implausible because his flight from the scene of the shooting demonstrated blatant consciousness of guilt, (2) not supported by the physical evidence that indicated only he possessed a gun, and (3) directly contradicted his own witnesses. The State's position appears to be that since the jury rejected defendant's claim of self-defense, it would not have believed that defendant had an unreasonable belief in the need for the use of force in self-defense. While there was evidence that contradicted defendant's claim of a reasonable belief in self-defense, the evidence in this case was conflicting. Several witnesses testified. All but one of the occurrence witnesses were members of defendant's or Ronald Lee's family. Only one disinterested witness testified and she did not see the shooting. The testimony was diametrically opposed as to what transpired prior to and after the shooting. It is the jury's function to weigh the evidence, assess the credibility of the witnesses, resolve conflicts in the evidence, and draw reasonable inferences therefrom. *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trial court determined that there was sufficient evidence in the record of a reasonable belief on defendant's part to justify giving an instruction on self-defense. Pursuant to *Lockett* and its progeny, it was a question of fact as to whether defendant's belief was reasonable or unreasonable. By refusing to give a second degree

murder instruction, the trial court took the factual determination from the jury. Based on this record, we cannot say that the result of the trial would not have been different had the jury received a second degree murder instruction.

¶ 61                                                              IV

¶ 62      Finally, defendant argues that the trial court erred in refusing to give a second degree murder instruction based on serious provocation. See 720 ILCS 5/9-2(a)(1) (West 2002). The State argues that defendant forfeited this argument because he did not raise it in the appellate court. The State attaches to its reply brief pages of defendant's appellate court brief in which he details his arguments concerning the alleged trial court error in failing to instruct the jury on second degree murder, involuntary manslaughter, and unlawful use of a weapon. The only argument raised with respect to the second degree murder issue is defendant's claim that the trial court failed to instruct the jury on second degree murder–unreasonable belief. No argument was raised regarding second degree murder–serious provocation. Further, the appellate court opinion addressed defendant's arguments concerning alleged jury instruction error on second degree murder, involuntary manslaughter, and unlawful use of a weapon. The court noted that defendant provided no argument or authority for his claim that the trial court erred in refusing to give a jury instruction on unlawful use of a weapon. Thus, the court found that argument forfeited. The court summarily disposed of defendant's claim of error in refusing to give an instruction on involuntary manslaughter. 399 Ill. App. 3d at 676. The only issue regarding second degree murder that the appellate court addressed was the unreasonable belief issue that is now before this court. Where the appellant in the appellate court fails to raise an issue in that court, this court will not address it. *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 464 (2004). Although the appellate court briefs have not been made a part of the record in this court, the foregoing discussion adequately establishes that defendant did not raise the second degree murder–serious provocation issue before the appellate court. Accordingly, we find that defendant has forfeited this issue and we decline to address it.

¶ 63                                                      CONCLUSION

¶ 64      For the reasons stated, we affirm the appellate court's judgment reversing defendant's convictions and remanding for a new trial.

¶ 65      Affirmed.