No. 2-08-0599     Filed:  6-10-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--3565 |
| JERRY B. HOLMAN, | ) ) | Honorable Christopher R. Stride, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Jerry B. Holman, was convicted by a jury of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2006)).  He was sentenced to 14 years' imprisonment plus a 3-year term of mandatory supervised release (MSR).  On appeal, defendant argues that: (1) the trial court erred in failing to grant his motion to suppress evidence; (2) he was denied his right to due process when the trial court prohibited defense counsel from using demonstrative evidence during cross-examination; (3) the trial court erred in imposing a fee for reimbursement of court-appointed counsel; and (4) the trial court erred in sentencing defendant to a three-year term of MSR where he was convicted of a Class 1 felony that carries only a two-year MSR term.  We affirm in part, vacate in part, and remand.

I. BACKGROUND

Prior to trial, defendant's attorney left the public defender's office but was granted leave to continue to represent defendant pro bono as private counsel. The succeeding assistant public defender was then allowed to withdraw as counsel. After a short exchange between the trial court and the attorneys present, the trial court assessed a public defender fee of $1,200.

The following evidence was adduced at trial. Waukegan police officer Joshua Amann testified that on September 15, 2007, he was patrolling a bike path in Waukegan that he described as an area having "a lot of graffiti" and "activity." At 9 p.m., Amann saw two men walking toward his parked squad car. One man, Donald Dagen, was carrying what Amann believed was a 40-ounce bottle of alcohol. The other man, defendant, was not carrying anything. Amann announced he was a police officer and turned on his squad car's spotlight. He ordered them loudly to "come here." Dagen put the bottle down near the bike path. Then he and defendant veered off the path and crouched behind some bushes. At this point, Amann could see only the tops of their heads. Amann called for backup and again ordered the two men to come over and talk to him. After "a few seconds," defendant and Dagen emerged from the bushes and approached the squad car. Amann had them stand with their hands on the squad car until two other police officers arrived approximately a minute or two later. The officers then patted down both men. Amann testified that they did not find any weapons or contraband on either man.

While the backup officers watched defendant, Amann searched the bushes in the area where he saw Dagen and defendant crouch down. He found a bag containing 20 individually wrapped "crack" cocaine rocks sitting on a leaf that was growing underneath the bushes. Dagen and defendant were placed under arrest and handcuffed. They were transported to the police station in separate squad cars. Amann noticed defendant moving around in the backseat of his squad. He told defendant

he always searched his car after transporting anyone. Amann testified that defendant replied that he was "throwing crack rocks in the back of [his] squad car." After defendant was brought into the station for booking, Amann searched the car while it was in the police garage and found 10 individually packaged crack rocks on the floor of the car.

Three officers then conducted a "strip search" of defendant and found seven individually wrapped "crack" cocaine rocks in the elastic of his underwear.

Waukegan police department Lieutenant Jon Oliver, the State's expert witness in narcotics, testified regarding the packaging and the weight of the packages of cocaine. During cross-examination of Oliver, defense counsel used a whiteboard to record Oliver's responses regarding factors that he routinely considered in determining whether a person possessed narcotics with the intent to sell them. Initially, the trial court allowed defense counsel to proceed over the State's objection to the use of the board. When defense counsel wrote "facts are better than assumptions" on the board, the trial court sustained the State's objection on the ground that the phrase was argumentative. The trial court allowed defense counsel to continue using the board to record a few more of Oliver's responses such as "cell phone," "money," and "scales," until the State renewed its objection. After ruling that the use of the board unfairly highlighted the officer's testimony during his cross-examination and was unfairly prejudicial, the trial court told defense counsel that he could:

> "make a list of all the things the officer testifies to that are factors and those things that are not, and in his closing argument he is certainly entitled to produce an exhibit which reflects those items. But I find that in cross-examination, before the State has rested its proofs, and before we have even gotten to a defense case, [sic] that the effect of this exhibit is purely prejudicial."

Defendant was convicted of one count of unlawful possession of a controlled substance with intent to deliver. 720 ILCS 570/401(c)(2) (West 2006).

## II. ANALYSIS

### A. Denial of Motion to Suppress Evidence

Defendant first argues that the trial court erred by denying his motion to suppress the evidence because the cocaine was recovered as a result of his unconstitutional seizure. Courts of review apply a two-part standard of review when faced with a challenge to a trial court's ruling on a motion to suppress evidence. People v. Luedemann, 222 Ill. 2d 530 (2006). First, the trial court's findings of historical fact are reviewed only for clear error, and deference is afforded to any inferences the factfinder drew from those facts. Luedemann, 222 Ill. 2d at 542. We will not disturb the trial court's factual findings unless they are against the manifest weight of the evidence. Luedemann, 222 Ill. 2d at 542. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." People v. Deleon, 227 Ill. 2d 322, 332 (2008). This deferential standard of review is grounded in the reality that the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. People v. Richardson, 234 Ill. 2d 233, 251 (2009). However, the reviewing court is free to assess the facts in relation to the issues presented in the case and may draw its own conclusions when deciding what relief should be granted. Luedemann, 222 Ill. 2d at 542. We review de novo the trial court's ultimate legal ruling on the motion to suppress. Luedemann, 222 Ill. 2d at 542.

The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill.

Const. 1970, art. I, §6. A person is "seized" within the meaning of the fourth amendment when, in view of the surrounding circumstances, a reasonable person would believe he was not free to leave, and the person submits to the police order. People v. Thomas, 198 Ill. 2d 103, 111 (2001).

In Thomas, the defendant did not submit to the police order and fled from the police, first on a bicycle and then on foot, and prevented what would have been an unlawful stop: "Had the defendant stopped when his path was obstructed, had he submitted to [the police officer's] show of authority, a seizure of the kind offensive to our constitution would have occurred. [The officer] would have effected an investigatory stop absent the requisite degree of suspicion to support it. The stop would have constituted an unreasonable seizure of the defendant's person. However, [the officer's] attempt to effect an unlawful stop did not implicate the fourth amendment because the defendant took flight and prevented it." Thomas, 198 Ill. 2d at 112, quoting People v. Thomas, 315 Ill. App. 3d 849, 857 (2000).

In this case, Amann was patrolling a bike path in an area that was known for "a lot of graffiti" and "activity." At 9 p.m., Amann saw two men walking toward his parked squad car. One of them was carrying what Amann believed was a 40-ounce bottle of alcohol. The second man, defendant, was not carrying anything. Amann announced he was a police officer and turned on his squad car's spotlight. He ordered them loudly to "come here." It was at this point that defendant's companion put down the bottle he was carrying and he and defendant "veered" off the path and into the bushes. Amann could still see where they were, and when they emerged from the bushes 5 to 10 seconds later, they approached his squad car. Moments later, backup officers had arrived. The search of the bushes where Amann observed defendant and his companion stoop down revealed cocaine "resting

on a leaf." Immediately after the cocaine was found in the bushes, Amann placed defendant under arrest.

Defendant argues that Amann had no justifiable basis for initiating a Terry stop, because the facts of this case establish only a mere hunch on the part of the officer, rather than specific articulable facts that, when taken together with rational inferences, warranted the intrusion. See Terry v. Ohio, 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80 (1968). However, the stop itself did not produce any "fruit of the poisonous tree." Therefore, the cases cited by defendant are inapposite, as the circumstances differ in that this search was not the product of an improper Terry stop.

We must point out that we do not agree with the State's argument that the police were justified in making a Terry stop because defendant "evaded" the police officer. This does not appear to be an "unprovoked flight" on the part of defendant, as asserted by the State. However, a perimeter search by an experienced officer led to the discovery of the cocaine. A reasonable inference is that defendant, who later was found to possess 17 similar packages of cocaine, placed it on the leaf in the area where he had been observed spending a few moments during his evening stroll.[1] See People v. Long, 369 Ill. App. 3d 860, 869 (2007) (police officers had probable cause to arrest defendant for possession of baggies of cocaine found on floor under bar table near defendant's feet, despite presence of 35 to 40 patrons in the bar).

The amount of time that had passed and the proximity of defendant to the bushes render reasonable the inference that defendant possessed the cocaine. Defendant abandoned the drugs

---

[1]Common sense would indicate that the positioning of a bag of crack rocks "on a leaf" was somewhat precarious and would not have remained as placed for very long.

before he was seized. He was not seized until he returned to the path, approached the squad car, and submitted to the order. The allegedly unlawful seizure at the time of submission did not result in the recovery of any evidence. Thus, the arrest based on the drugs found during the perimeter search was proper, and the search incident to that arrest was valid.

## B. Denial of Use of Demonstrative Evidence

Defendant next contends that the trial court's decision to prohibit the use of the whiteboard during cross-examination of the State's expert witness was an abuse of discretion that denied defendant his right to due process and a fair trial. The use of demonstrative evidence lies within the sound discretion of the trial court, and we review the trial court's decision for an abuse of that discretion. People v. Williams, 275 Ill. App. 3d 242, 248 (1995). " 'Abuse of discretion' is the most deferential standard of review--next to no review at all--and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." People v. Anderson, 367 Ill. App. 3d 653, 664 (2006). An abuse of discretion occurs when the trial court's decision is "fanciful, arbitrary, or unreasonable" to such a degree that no reasonable person would agree with it. People v. Campos, 349 Ill. App. 3d 172, 175 (2004).

During cross-examination of Oliver, the State's expert witness in narcotics, defense counsel used a whiteboard to record Oliver's testimony regarding factors that he routinely considered in determining whether, in his opinion, a person possessed narcotics with the intent to sell them. Initially, the trial court allowed defense counsel to proceed over the objection of the State. The trial court sustained the State's objection on the ground that the phrase "facts are better than assumptions" was argumentative. The trial court allowed defense counsel to continue using the board to record Oliver's responses, until the State renewed its objection. At this point, the trial court informed

defense counsel that he was entitled to prepare an exhibit for use during closing argument, but ruled that the use of the board unfairly highlighted the officer's testimony during his cross-examination and was prejudicial.

To be allowed, demonstrative evidence must be relevant to an issue of the case. "Certain demonstrative aids, such as those which illustrate and thus assist the jury in understanding testimonial evidence, may be allowed at trial. [Citation.] However, an exhibit which merely summarizes clearly understandable testimony and thereby serves only to memorialize particular evidence should be disallowed." People v. Williams, 161 Ill. 2d 1, 67-68 (1994); see Simmons v. City of Chicago, 118 Ill. App. 3d 676, 684-85 (1983) (disallowance of the use of overhead slides to accompany a defense witness's testimony was a proper exercise of the court's discretion because the evidence was cumulative); People v. Kinion, 105 Ill. App. 3d 1069, 1076-77 (1982) (allowance of a chart summarizing the opinion testimony of an expert witness was an abuse of discretion). Any layman would understand the terms such as "money," "cell phone," and even "scales" as testified to by this witness. In other words, while this witness was an expert, his testimony on cross-examination concerned matters that could be readily understood by the jury from his oral testimony.

Further, the record reflects that defense counsel gave no indication to the trial court of his intention to use the board as a visual aid. After he began to write on it, the trial court overruled the State's objection, and it was only after defense counsel began to write what can only be considered his own interpretation of Oliver's testimony that the trial court sustained the State's objections. During a sidebar conference, the court informed defense counsel that he was free to use a chart during his closing argument, but ruled that, at that point in the trial, the use of the board had become prejudicial and was disallowed.

In his reply brief, defendant asserts that "defense counsel needed the whiteboard to effectively cross-examine the only State's witness testifying as to an element of the offense." He further asserts that he had "no other way to present his defense." We consider these assertions to be an overstatement in that the whiteboard was being used to merely write down responses that defense counsel was eliciting from the witness during cross-examination. The testimony was not technical and was clearly understandable. Had defense counsel chosen to use a chart of the very same testimony, he would have been allowed to do so during his closing argument. Claiming that he had no defense without the board is meritless hyperbole.

This was a matter for the trial court to decide and we will not interfere absent an abuse of discretion. Therefore, we conclude that the trial court did not err in preventing defense counsel from using the whiteboard as demonstrative evidence during cross-examination.

## C. Fee Imposed for Appointed Counsel

The State concedes error, stating in its brief that "[t]he defendant complains that the trial court improperly imposed a fee of $1,200 for the services of the public defender's office. The record indicates that he is correct." Further, "[t]he record does not show that the defendant was given notice of the fact that reimbursement was to be considered by the court, and was not given the opportunity to present evidence regarding the payment order. Additionally, the record does not show the trial court considered the defendant's financial affidavit." The State concludes that the requirements of section 113--3.1(a) of the Code of Criminal Procedures of 1963 (Code) (725 ILCS 5/113--3.1(a) (West 2006)) were not followed. See People v. Roberson, 335 Ill. App. 3d 798, 804 (2002). Therefore, we vacate the reimbursement order and remand for a hearing on defendant's ability to pay for the services of his court-appointed attorney pursuant to section 113--3.1(a) of the Code.

D. Mandatory Supervised Release

Defendant argues that his three-year term of MSR was erroneous and should have been a term of two years under the provisions of the sentencing statute. Because interpreting a statute presents a question of law, our review is de novo. People v. Donoho, 204 Ill. 2d 159, 172 (2003).

Defendant was convicted of possession of cocaine with the intent to deliver, a Class 1 felony. Due to his previous convictions he was sentenced under the "habitual offender" statute, which mandates that when a defendant is convicted of a Class 1 or 2 felony, after having twice been convicted of a Class 2 or greater felony, such defendant shall be sentenced as a Class X offender. 730 ILCS 5/5--5--3(c)(8) (West 2006). The trial court sentenced him to 14 years' imprisonment with a 3-year term of MSR.

The identical issue was raised in a recent case before this court, People v. McKinney, No. 2--08--0584 (March 25, 2010), where the defendant was convicted of a Class 2 felony, but sentenced as a Class X offender because of his criminal history. This court concluded that the term of MSR applicable to Class X felonies should apply and that "such a defendant 'shall be sentenced as a Class X offender' and shall receive the sentence--the entire sentence--that one convicted of a Class X felony would receive." (Emphasis in original.) McKinney, slip op. at 4. Three years is the length of MSR applicable to a Class X felony (730 ILCS 5/5--8--1(d)(1) (West 2006)), while the term of MSR for a Class 1 felony is two years (730 ILCS 5/5--8--1(d)(2) (West 2006)).

Defendant, citing People v. Pullen, 192 Ill. 2d 36 (2000), argues that "the plain language of the statute is clear--the class of conviction, not the sentence, determines what will be the offender's term of MSR." With language equally applicable to this case, the McKinney opinion distinguished Pullen: "The statute considered in Pullen does not specify what sentence a Class X offender receives.

Rather, it merely limits the extent to which separate sentences for separate offenses may be served consecutively." McKinney, slip op. at 8.

Defendant also asserts that this court should not be persuaded by the decisions in People v. Watkins, 387 Ill. App. 3d 764 (2009); People v. Smart, 311 Ill. App. 3d 415 (2000); and People v. Anderson, 272 Ill. App. 3d 537 (1995). Defendant suggests that this entire line of cases is wrongly decided. These cases were extensively analyzed by this court in McKinney, which then concluded:

"Although we agree with the result reached in Anderson, Smart, and Watkins, we find them overreaching to the extent that they relied on public policy reasons rather than the plain language of the relevant statutes. See In re Estate of Snodgrass, 336 Ill. App. 3d 619, 624 (2003) (noting that considerations of public policy should not lure courts away from a statute's clear language). In our view, the plain language of the applicable statutes dictates that defendants sentenced as Class X offenders shall receive the same three-year MSR term imposed on defendants convicted of Class X felonies." McKinney, slip op. at 6.

We agree that the statutory mandate means that "defendant shall receive a sentence that one convicted of a Class X felony would receive, i.e., a prison term ranging from 6 to 30 years followed by a 3-year term of MSR." McKinney, slip op. at 8. Therefore, defendant, who was convicted of a Class 1 felony but sentenced as a Class X offender because of his criminal history, is subject to an MSR term of three years. See 730 ILCS 5/5--5--3(c)(8), 5--8--1(d)(1) (West 2006).

### III. CONCLUSION

The judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded.

Affirmed in part and vacated in part; cause remanded.

HUTCHINSON and BURKE, JJ., concur.