# Illinois Official Reports

## Appellate Court

***People v. Taylor*, 2016 IL App (1st) 141251**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROMARO TAYLOR, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1251 |
| Filed | October 18, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-17491; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Conviction affirmed; remanded for resentencing. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Michael Gentithes, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Caitlin M. Valiulis, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a 2014 jury trial, defendant Romaro Taylor was convicted of attempted murder and aggravated battery with a firearm and sentenced as a Class X offender to 36 years of imprisonment. On appeal, he argues that (1) the trial court erred in refusing to instruct the jury on defense of others, (2) trial counsel was ineffective for failing to request a jury instruction that Taylor could not be found guilty of attempted first degree murder if he unreasonably believed he needed to use force in defense of others, (3) the trial court erroneously refused to sentence Taylor as a Class 1 offender on his attempted murder conviction, and (4) the trial court improperly imposed certain fines and fees. For the reasons that follow, we affirm Taylor's conviction, vacate the $2 Public Defender Records Automation Fee, and remand for resentencing.

¶ 2                                              BACKGROUND

¶ 3    On December 20, 2010, Taylor shot his then-girlfriend, Lashae Depratto, after her car hit his ex-girlfriend's car, in which Taylor's seven-year-old daughter was a passenger. Depratto and an eyewitness identified Taylor as the shooter, but he evaded arrest until September 2011. Following his arrest, Taylor was charged with, *inter alia*, attempted first degree murder and aggravated battery with a firearm.

¶ 4    At a March 2014 jury trial, Depratto testified that on December 20, she drove Taylor to his mother's house on 8th Avenue in Phoenix, Illinois, because Taylor's niece was coming over to pick up clothes. Once they arrived at the house, Taylor went inside, but he asked Depratto to leave because his mother did not like her. Depratto did not leave but remained in her car, which was parked on the west side of the street directly in front of Taylor's mother's house, for approximately 20 minutes. She then went to the front door of the house and asked Taylor if she could use the bathroom. Taylor allowed her inside, and the two then argued over Depratto's request that Taylor return his set of keys to her house and car. During their exchange, Taylor's niece and his daughter arrived, having been driven over by Erica Braxton, Taylor's ex-girlfriend and mother of his child. Braxton did not come into the home but waited in her car, which was parked on the east side of 8th Avenue, across from Taylor's mother's house.

¶ 5    Eventually, Depratto obtained her keys from Taylor and left the house, but instead of driving home, she circled the block. As she approached Taylor's mother's house, driving southbound, she saw Taylor leaning inside Braxton's car "fondling" and "playing" with her. Angered, Depratto drove past them, but then made a U-turn and drove northbound on the east side of 8th Avenue. When she returned to the scene, Taylor was no longer standing by Braxton's car. As Depratto neared Braxton's car, she testified that she swerved to avoid a pothole or speed bump (though there was no evidence of either near the site of the occurrence) and sideswiped the driver's side of Braxton's car. The collision caused Depratto's right axle and tire to "break" and her airbags to deploy. Additionally, the front bumper of Braxton's car was pulled off. When Depratto's car came to a stop in front of Braxton's vehicle, Depratto put the car in park, turned it off, and tried, unsuccessfully, to restart it. She then heard Taylor say either "bitch you tried to kill my kid," or "bitch you trying to kill my kid." When Depratto turned her head, Taylor had emerged from his mother's yard, 10 feet away, and was approaching her car with a gun in his hand. As Taylor stood at her closed car window, he shot

at Depratto three times, hitting her arm as she raised her hands to cover her face. She was eventually taken to the hospital and treated for her injuries.

¶ 6      On cross-examination, Depratto admitted telling investigators who spoke to her while she was hospitalized that she was upset at Taylor because she believed he and Braxton were talking about her behind her back. Although she denied telling investigators that she was driving 30 to 35 miles per hour when she collided with Braxton's parked car, she was impeached on this point by the stipulated testimony of Investigator Paul Jimos and Detective Sergeant Valadez of the Phoenix police department, who interviewed her on December 23, 2010.

¶ 7      At the jury instruction conference following the conclusion of testimony, Taylor sought an instruction that he was acting in defense of others, which the court declined to give, stating: "The [d]anger had subsided. There was no more danger. When the car stopped, the car wasn't going anywhere. So at that point in time self defense is no longer available. So I'm not giving them the self defense instruction or *** the defense of others ***."

¶ 8      The jury ultimately convicted Taylor of attempted first degree murder and aggravated battery with a firearm, and the court merged the two convictions for sentencing purposes.

¶ 9      A defendant convicted of attempted first degree murder is generally subject to Class X sentencing (720 ILCS 5/8-4(c)(1) (West 2012)), but at Taylor's sentencing hearing, defense counsel argued that he should be sentenced as a Class 1 offender pursuant to section 8-4(c)(1)(E) of the Criminal Code of 2012, which reads:

> "[I]f the defendant proves by a preponderance of the evidence at sentencing that, at the time of the attempted murder, he or she was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill, or another, and, had the individual the defendant endeavored to kill died, the defendant would have negligently or accidentally caused that death, then the sentence for the attempted murder is the sentence for a Class 1 felony[.]" 720 ILCS 5/8-4(c)(1)(E) (West 2012).

The trial court found this section inapplicable because it did not believe that had Depratto died, Taylor's conduct could have been described as accidental or negligent. Alternatively, the court found that Taylor was not acting under a "sudden and intense passion." The court sentenced Taylor to 36 years of imprisonment. Taylor unsuccessfully moved to reconsider his sentence.

¶ 10                               ANALYSIS

¶ 11      We first address the claimed error in the jury instructions. Taylor contends that the trial court erred in refusing to instruct the jury on defense of others, which is an affirmative defense requiring some evidence that (1) unlawful force was threatened against defendant or others, (2) defendant was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) defendant subjectively believed a danger existed requiring the use of force applied, and (6) defendant's belief was objectively reasonable. See *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995); 720 ILCS 5/7-1(a) (West 2012). The overarching question is whether the defendant's subjective belief in the necessity of using deadly force was reasonable under the circumstances. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 58. A defendant is entitled to a self-defense or defense of others instruction so long as there is slight evidence adduced at trial to support his theory. *People v. Lee*, 213 Ill. 2d 218, 224 (2004).

¶ 12    Our supreme court has expressed divergent views as to what standard of review we apply to a trial court's refusal to give a specific jury instruction. Compare *People v. Everette*, 141 Ill. 2d 147, 157 (1990) (applying *de novo* standard of review to issue of whether defendant was entitled to jury instructions on self-defense) and *People v. Washington*, 2012 IL 110283, ¶ 19 (reviewing *de novo* trial court's refusal to instruct jury on second degree murder), with *People v. Mohr*, 228 Ill. 2d 53, 65 (2008) (reviewing trial court's decision to give instruction defining provocation for abuse of discretion) and *People v. Jones*, 219 Ill. 2d 1, 31 (2006) ("The giving of jury instructions is a matter within the sound discretion of the trial court."). This court has examined this conflict in recent cases and determined that abuse of discretion is the appropriate standard of review. See, *e.g.*, *People v. Cacini*, 2015 IL App (1st) 130135, ¶ 46; *People v. Gibson*, 403 Ill. App. 3d 942, 950-51 (2010), *abrogated on other grounds by People v. Bailey*, 2014 IL 115459, ¶ 18; *People v. Couch*, 387 Ill. App. 3d 437, 444 (2008); see also *People v. Boston*, 2016 IL App (1st) 133497, ¶¶ 34, 37 (distinguishing *Everette* and *Washington* but finding outcome was same under either abuse of discretion or *de novo* review). We reach the same conclusion.

¶ 13    In *Everette*, the first case to apply a *de novo* standard of review to a trial court's jury instructions, the supreme court relied on *People v. Lockett*, 82 Ill. 2d 546, 553 (1980), for the proposition that "[i]t is a matter of law whether the defendant has met the evidentiary minimum entitling him to instructions on an affirmative defense." 141 Ill. 2d at 157. But in *Lockett*, the supreme court stated only that it was the duty of the trial court to determine if there was any evidence tending to show that the defendant had a subjective belief that the use of force was necessary, while it was for the jury to decide if that subjective belief was reasonable or unreasonable. *Lockett*, 82 Ill. 2d at 552-53. The *Lockett* court then noted that it could conceive of no circumstance in which the trial court could take that question from the jury and determine, as a matter of law, that defendant's subjective belief in the need to use force was reasonable rather than unreasonable. *Id.* at 553. This conclusion does not support a *de novo* standard of review for the more general issue of whether the evidence is sufficient to support the giving of a jury instruction. See *People v. Boston*, 2016 IL App (1st) 133497, ¶¶ 34-36.

¶ 14    To be sure, our supreme court repeated the *Everette* standard in *People v. Washington*, 2012 IL 110283, ¶ 19. But the issue in *Washington* was whether a trial court that instructs the jury on self-defense is required, as a matter of law, to further instruct the jury on second degree murder. *Id.* ¶ 56. This is clearly a legal question calling for *de novo* review. In contrast, here, the issue is whether there is sufficient evidence to support a defense of others instruction, which is a question of fact, not of law. See *Cacini*, 2015 IL App (1st) 130135, ¶ 46. As such, an abuse of discretion standard of review is appropriate. *Id.*

¶ 15    Abuse of discretion is the most deferential standard of review, second only to no review at all. *People v. Holman*, 402 Ill. App. 3d 645, 650 (2010). An abuse of discretion occurs when the trial court's decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ortega*, 209 Ill. 2d 354, 359 (2004). Stated differently, we will reverse a trial court's decision for an abuse of discretion only where the decision is " 'clearly against logic,' *** 'without employing conscientious judgment.' " *Couch*, 387 Ill. App. 3d at 444 (quoting *Long v. Mathew*, 336 Ill. App. 3d 595, 600 (2008)).

¶ 16    We cannot say the trial court's conclusion was illogical or evinced a lack of judgment. Depratto testified that her car was inoperable after the crash, as her airbags had deployed and her right axle was broken. Her attempt to restart it was unsuccessful. Thus, she no longer posed

a danger to Taylor's daughter. Taylor contends on appeal that from his vantage point 10 feet away from the scene of the crash, he was unaware that Depratto was unable to start her car and cause further injury. But because Taylor did not testify, we do not know what he saw or could see. Accordingly, it was not unreasonable for the trial court to disregard this speculative argument. Finally, the fact that Taylor yelled that Depratto was "trying to" or "tried to" "kill [his] kid," in light of the other evidence, does not support Taylor's contention that harm was imminent. The car had stopped, the airbags had deployed, and there was no immediate danger that Depratto would (or could) restart it. Even if Taylor could not discern the condition of the vehicle from 10 feet away, when he stood five to six inches from Depratto's window and shot at her, he surely knew that the threat had passed, as the evidence showed she put her hands up in a defensive posture. For these reasons, we conclude that the trial court did not abuse its discretion when it declined to instruct the jury on defense of others. See *People v. Dillard*, 319 Ill. App. 3d 102, 106 (2001) (right of self-defense does not permit a defendant to act in retaliation or "to pursue and inflict injury upon an initial aggressor after the aggressor abandons the altercation").

¶ 17    Taylor next challenges his counsel's performance with regard to tendering jury instructions, contending that counsel should have sought a nonpattern instruction that if the jury found he had an unreasonable belief in the need to use force, it should acquit him of attempted first degree murder. A claim of ineffective assistance requires a defendant to demonstrate (1) that counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984) (quoting *Strickland*, 466 U.S. at 686).

¶ 18    Taylor's argument is premised on his belief that Illinois law allows a defendant who is acting in imperfect self-defense to escape responsibility for attempted first degree murder. But the law is not so clear. To be sure, in *People v. Reagan*, 99 Ill. 2d 238, 240 (1983), our supreme court held that the offense of attempted voluntary manslaughter did not exist in Illinois because a defendant cannot intend to kill without lawful justification while simultaneously having an unreasonable belief in the need to use force in self-defense. See also *People v. Lopez*, 166 Ill. 2d 441, 448-49 (1995) (applying logic of *Reagan* to conclude that Illinois law does not recognize offense of attempted second degree murder). From this, however, it does not necessarily follow that a defendant who has an unreasonable belief in the need to use force cannot be convicted of attempted *first* degree murder. Indeed, shortly after Taylor's trial concluded, this court rejected that very proposition. See *People v. Guyton*, 2014 IL App (1st) 110450, ¶ 46 (affirming defendant's conviction for attempted first degree murder notwithstanding that evidence demonstrated he was acting in imperfect self-defense).

¶ 19    But in light of our holding that the trial court did not err in finding there was not even slight evidence supporting an instruction on defense of others, we need not resolve this issue. Absent evidence tending to show that Taylor was acting in defense of others, he cannot be entitled to an instruction premised on a finding that his belief in the need to defend others was

unreasonable. Thus, Taylor's claim that counsel was ineffective for failing to seek such an instruction fails.

¶ 20 Next, Taylor alleges error in the trial court's refusal to consider sentencing him as a Class 1 offender pursuant to section 8-4(c)(1)(E) of the Criminal Code, which we have quoted above. The trial court found this section inapplicable, reasoning that "as you read the statute itself, the very last part which basically, had the individual defendant therefore killed, the defendant would have negligently or accidentally caused the death. There's no negligent or accidentally here." In other words, the trial court understood the statute to require Taylor to prove that he intentionally attempted to kill Depratto due to serious provocation, but that, had he been successful, the killing would have been deemed negligent or accidental. Taylor argues, and the State concedes, that this interpretation is incorrect. We agree.

¶ 21 Resolution of this issue is a matter of statutory interpretation, which presents a question of law that we review *de novo*. *People v. Chapman*, 2012 IL 111896, ¶ 23. Any interpretation of a statute necessarily begins with the understanding that our primary role is to give effect to the intent of the legislature. *Id.* The best indication of legislative intent is the language of the statute itself, and if that language is clear on its face, it is unnecessary to resort to other aids of construction. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007).

¶ 22 Here, the statutory language clearly addresses two separate scenarios. First, it addresses the scenario where the defendant attempts to kill the one who provoked him, and second, it addresses the "transferred intent" scenario where the defendant specifically intends to kill his provoker but instead takes a substantial step toward killing another, whose death, had it occurred, would have been deemed negligent or accidental. Under either circumstance, provided that the defendant was seriously provoked and acting under intense passion, he is entitled to a classification reduction for sentencing purposes.

¶ 23 The trial court's interpretation would make it impossible for a defendant convicted of attempted murder to obtain a reduction in classification based on provocation and render the statute meaningless. Attempted murder requires a showing that a defendant had the specific intent to kill (see *People v. Hill*, 276 Ill. App. 3d 683, 687 (1995)), which is fundamentally incompatible with the statutory language providing that if the defendant's victim died, the death would have been deemed negligent or accidental. Taylor's interpretation of the statute as referring both to the situation where the defendant attempts to kill his provoker as well as the separate situation where the defendant negligently or accidentally acts against another in his attempt to kill his provoker better conforms to legislative intent. See *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 22 ("We will *** avoid a construction of a statute that renders any portion of it meaningless.").

¶ 24 But this conclusion does not end our inquiry, as the trial court alternatively held that Taylor was not acting under a sudden and intense passion so as to entitle him to a classification reduction in any event. We review the trial court's sentencing decision for an abuse of discretion. *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 25 In reaching its decision, the trial court reasoned "There was no intense passion. The vehicle was stopped. The vehicle wasn't moving. He initially saw her trying to start it, but the vehicle didn't start. The vehicle didn't move. He went there and shot her." But the fact that the car was stopped, while relevant to the inquiry of whether danger was ongoing for purposes of self-defense or defense of others, has no bearing on whether Taylor was "acting under a sudden and intense passion." Instead, the passion under which Taylor acted stemmed from witnessing

Depratto drive her car at a speed of 30 to 35 miles per hour into the car carrying his daughter. Taylor evinced this passion by exclaiming "you tried to kill my kid," as he ran from his mother's yard to shoot Depratto. These events took place in quick succession, leaving little time for Taylor's anger to subside. While we are mindful of the deference we owe to the trial court's findings on issues of fact, the evidence leads us to conclude that Taylor was indeed acting under a sudden and intense passion when he shot Depratto, and the trial court's decision to the contrary was an abuse of discretion. See *People v. Rivera*, 2013 IL 112476, ¶ 37 (trial court abuses its discretion where decision is "arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it").

¶ 26    Of course, the fact that Taylor was impassioned, standing alone, is insufficient to entitle him to a classification reduction. See 720 ILCS 5/8-4(c)(1)(E) (West 2012) (requiring showing of serious provocation); *cf. People v. Garcia*, 165 Ill. 2d 409, 429 (1995) ("[P]assion on behalf of the defendant, no matter how violent, will not relieve the defendant of culpability for first degree murder unless it is engendered by provocation which the law recognizes as reasonable."). The parties dispute whether Taylor made the requisite showing under the statute that he was seriously provoked by Depratto. However, because the trial court (erroneously) concluded that Taylor was not acting under a sudden and intense passion, it did not reach the issue of provocation. Nothing herein should be considered as an indication of what the finding should be on the issue of provocation. Therefore, we remand for the trial court to make this factual determination in the first instance. See *People v. Tramble*, 2012 IL App (3d) 110867, ¶¶ 17-18 (remanding for trial court to make factual findings in accordance with correct interpretation of statute).

¶ 27    Finally, Taylor challenges certain fines and fees the court imposed. Specifically, Taylor contends that the imposition of the $2 Public Defender Records Automation Fee (55 ILCS 5/3-4012 (West 2012)) and the $2 State's Attorney Records Automation Fee (55 ILCS 5/4-2002.1(c) (West 2012)) violates the prohibition on *ex post facto l*aws, as both assessments were enacted in 2012, after Taylor committed these crimes.

¶ 28    As noted, Taylor did not challenge any of the fines and fees imposed by the trial court at the time of sentencing. The State has addressed the merits of Taylor's argument despite the forfeiture. Had the State argued forfeiture, we would have been hard-pressed to overlook it, given the insubstantial nature of the fees assessed. See Ill. S. Ct. R. 615(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). And the rubric typically employed by appellate counsel—that the judgment imposing allegedly improper fines and fees is void—is no longer viable in light of *People v. Castleberry*, 2015 IL 116916, ¶ 17 (abrogating rule that sentence not conforming to statutory requirements is void). We encourage trial counsel to address such claimed errors in the trial court instead of risking forfeiture on appeal. But because the State did not argue forfeiture in this case, we will address the claims on their merits.

¶ 29    We have previously held that the *ex post facto* doctrine does not apply to these automation fees, because they are compensatory rather than punitive. See *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 30 (" 'The prohibition against *ex post facto* laws applies only to laws that are punitive.' " (quoting *People v. Dalton*, 406 Ill. App. 3d 158, 163 (2010))); see also *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 16-17 (automation fees are compensatory). While Taylor argues that the automation charges are fines—not fees—he cites no authority for that

proposition, and thus we conclude that the *ex post facto* doctrine does not prohibit the assessment of these charges.

¶ 30 Nevertheless, as the State notes, because Taylor was represented by private counsel during trial, the $2 Public Defender Records Automation Fee is inapplicable, and we vacate the same.

¶ 31 Taylor also challenges the $25 Court Services Fee, contending that it is inapplicable to him. But this contention is based on a misreading of the statute, which provides, in relevant part:

> "In criminal, local ordinance, county ordinance, traffic and conservation cases, such fee shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting a judgment of conviction, or order of supervision, or sentence of probation without entry of judgment pursuant to Section 10 of the Cannabis Control Act, Section 410 of the Illinois Controlled Substances Act, Section 70 of the Methamphetamine Control and Community Protections Act, Section 12-4.3 or subdivision (b)(1) of Section 12-3.05 of the Criminal Code of 1961 or the Criminal Code of 2012, Section 10-102 of the Illinois Alcoholism and Other Drug Dependency Act, Section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act, or Section 10 of the Steroid Control Act." 55 ILCS 5/5-1103 (West 2012).

¶ 32 Taylor argues that because he was not convicted under the enumerated provisions of the specified acts, his fee was improperly assessed. But we have rejected this reading of the statute, noting "[i]t is clear that the statute permits assessment of this fee upon *any judgment of conviction* but also permits such assessment for orders of supervision or probation, made without entry of a judgment of conviction, for certain limited and enumerated criminal provisions." (Emphasis added.) *People v. Williams*, 2011 IL App (1st) 091667-B, ¶ 18; see also *People v. Anthony*, 2011 IL App (1st) 091528-B, ¶¶ 26-27. We see no reason to depart from these holdings and conclude that the court services fee was properly assessed against Taylor.

¶ 33                                              CONCLUSION

¶ 34 For these reasons, we affirm Taylor's conviction, vacate the $2 Public Defender Records Automation Fee, and remand for resentencing on the attempted murder conviction.

¶ 35 Conviction affirmed; remanded for resentencing.