2022 IL App (2d) 210132-U
No. 2-21-0132
Order filed May 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kendall County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No.  20-CF-154 |
| | ) | 20-CF-182 |
| | ) | |
| CHARLES D. WILLIAMS, | ) | Honorable |
| | ) | Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Zenoff and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*:  There was no error, much less plain error, in the trial court's failure to order a mental examination of defendant before imposing sentence. Although there were allusions in the record that defendant might have a mental health disorder related to his criminal activity, there was nothing substantial enough—such as a prior diagnosis—to oblige the court to order an examination.

¶ 2     Defendant, Charles D. Williams, entered nonnegotiated pleas of guilty in the circuit court

of Kendall County to (1) one count of aggravated domestic battery (720 ILCS 5/12-3.3(a)(5) (West

2020)), a Class 2 felony, in case No. 20-CF-154 and (2) one count of domestic battery (*id.* § 12-

3.2(a)(1)) in case No. 20-CF-182. The domestic battery conviction in case No. 20-CF-182 was a

Class 3 felony because defendant had three prior domestic battery convictions (see *id.* § 12-3.2(b)). Following a sentencing hearing, the trial court imposed concurrent prison terms of five years for aggravated domestic battery and three years for domestic battery. Defendant argues on appeal that the trial court erred in imposing sentence without first ordering a mental examination of defendant pursuant to section 5-3-2(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-3-2(b) (West 2020)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      As the factual basis for defendant's aggravated domestic battery conviction, the prosecutor stated that, on June 17, 2020, defendant and his girlfriend, D.B., were in a motel room when they became involved in an argument that turned physical. Defendant put his hand around D.B.'s neck and squeezed, causing her to have difficulty breathing. As the factual basis for the domestic battery conviction, the prosecutor stated that, on May 6, 2020, defendant and D.B. were in another argument at the same motel. Defendant struck D.B. on the head and face. The presentence investigation report (PSI) indicated, that at the time of both offenses, defendant was serving sentences of probation and conditional discharge for prior domestic battery convictions. D.B. was the victim of those prior offenses. Defendant also had a 2017 battery conviction and had been placed on supervision for batteries in 2015, 2016, and 2017. Defendant's probation officer indicated that defendant never reported to the probation department. He also failed to attend court-ordered substance-abuse, domestic-violence, and anger-management programs. Defendant reported occasional use of alcohol and cannabis. He reported that he had never been diagnosed with any mental health issues.

¶ 5      At defendant's sentencing hearing, D.B. testified that defendant choked her on two occasions in 2019. She also testified about another incident in 2019. She and defendant had argued

and then parted. Later that day, defendant tracked D.B. down at a friend's apartment and started vandalizing D.B.'s car as she watched from the apartment's window. There was a police car sitting in the apartment building's parking lot. Defendant indicated that he did not care that the police were there, and he walked up to the police car and waved. He then went to the apartment window where D.B. was standing and punched her face through the window screen. D.B. testified that, on more than one occasion, she told police officers that she believed that defendant had mental health issues that needed to be addressed. She also told the police that she believed that defendant had substance abuse problems.

¶ 6     During argument, defense counsel indicated that she shared D.B.'s concern "that there is a mental health issue that for whatever reason, [defendant] fell through the cracks." Accordingly, defense counsel recommended that the court sentence defendant to probation. However, if defendant were sentenced to prison, defense counsel suggested that he receive a mental health evaluation upon release.

¶ 7     Speaking in allocution, defendant insisted that he needed "professional help such as anger management." Defendant also stated, "I acknowledge my history with this issue as a result of my relationship with heroin and alcohol."

¶ 8     The court sentenced defendant to concurrent prison terms of five years for aggravated domestic battery and three years for domestic battery. The trial court also stated: "I would make a recommendation that—although there's no evaluation at this time, but that [defendant] be placed in a facility, if possible, where he could receive a mental health evaluation and receive treatment if deemed appropriate." Defendant filed a motion to reconsider his sentence. The trial court denied the motion, and this appeal followed.

¶ 9                                  II. ANALYSIS

¶ 10    Defendant argues that the trial court erred by failing to order a mental examination of defendant before sentencing him.

¶ 11    Section 5-3-1 of the Code (*id.* § 5-3-1 (West 2020)) provides for the preparation of a PSI. Section 5-3-2(b) (*id.* § 5-3-2(b)) provides:

> "The investigation shall include a physical and mental examination of the defendant when so ordered by the court. If the court determines that such an examination should be made, it shall issue an order that the defendant submit to examination at such time and place as designated by the court and that such examination be conducted by a physician, psychologist or psychiatrist designated by the court."

Defendant argues that the court should have ordered a mental examination because both D.B. and defense counsel expressed the belief that defendant might have had some mental disorder related to his criminal behavior. Moreover, defendant contends that evidence of his erratic behavior bolsters that belief. Defendant notes, in particular, the incident when he attempted to draw the attention of the police while he was vandalizing D.B.'s car, and then proceeded to assault D.B. According to defendant, such behavior "hardly exhibits the hallmark of a mentally sound mind." Defendant also stresses that the court recommended that he be placed in a facility where he could receive a mental examination and treatment.

¶ 12    The State contends that defendant forfeited the issue by failing to raise it in his motion to reconsider his sentence. Defendant argues that the issue is reviewable under the plain-error rule. As our supreme court has explained:

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occured [*sic*] and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the

seriousness of the error, or (2) a clear or obvious error occured [*sic*] and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

"The first step in a plain error analysis is to determine whether error occurred." *People v. McDonald*, 2016 IL 118882, ¶ 48. As explained below, we find no error.

¶ 13    We review for an abuse of discretion a court's failure to order an examination or study pursuant to section 5-3-2(b) and 5-3-3 of the Code. *People v. Burnett*, 385 Ill. App. 610, 613 (2008). "An abuse of discretion occurs when the trial court's decision is 'fanciful, arbitrary, or unreasonable' to such a degree that no reasonable person would agree with it." *People v. Holman*, 402 Ill. App. 3d 645, 650 (2010) (quoting *People v. Campos*, 349 Ill. App. 3d 172, 175 (2004)). We find no abuse of discretion here.

¶ 14    No qualified witness testified that defendant had any mental illness that might serve as a factor in mitigation and bear on his rehabilitative potential. Throughout his extensive contacts with the criminal justice system, it does not appear that defendant was ever formally diagnosed with a mental condition. In arguing that he should have received a mental examination, defendant focuses on D.B.'s vague statements to police that she thought defendant had mental health issues that needed to be addressed. In addition, during allocution, defendant indicated that he believed that he needed professional help. However, we cannot say that these allusions to the mere possibility that defendant suffered from some mental health condition obliged the trial court to order an examination. "A sentence will not be vacated on speculation of what a mental examination may have revealed, when a judge refused to order that examination, believing that the defendant failed to raise the issue of his mental condition." *People v. Woods*, 134 Ill. App. 3d 294, 301 (1985).

Even though the trial court believed it might be beneficial for defendant to have access to mental health resources in prison, we cannot conclude that the trial court was obliged to order a mental examination before sentencing.

¶ 15                                III. CONCLUSION

¶ 16    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 17    Affirmed.