2026 IL App (1st) 240699-U

No. 1-24-0699

Order filed January 12, 2026

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 13357 |
| | ) | |
| YOLANDA RAMIREZ, | ) | Honorable |
| | ) | Aleksandra Gillespie, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for aggravated battery over her contention that the State failed to disprove her affirmative defense beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Yolanda Ramirez was found guilty of aggravated battery (720 ILCS 5/12-3.05(c) (West 2022)), and sentenced to two years of probation. On appeal, defendant contends that the State failed to disprove, beyond a reasonable doubt, that she had a reasonable belief in the need to use force to protect her daughter. We affirm.

¶ 3 Defendant was charged with aggravated battery in that while committing a battery, she knowingly caused bodily harm to Sherise George by striking George about the body while they were on or about a public place of accommodation or amusement.

¶ 4 In defendant's answer to the State's motion for pretrial discovery, defendant raised the affirmative defenses of defense of others and mistake of fact.

¶ 5 At trial, George testified that on October 17, 2022, she worked at a Target retail store open to the public. Around 10:15 a.m., she assisted two women in the self-checkout area. A security guard approached, and stated that the women were "ticket switching." One of the women then called George a "stupid b***" and gave her the "middle finger." George responded in kind. The second woman struck George in the face and pulled her hair. Then, both women were "swinging" at her. George tried to swing back, and other employees tried to stop the fight. One of the two women grabbed George around the neck. Suddenly, a third woman, whom George identified in court as defendant, came from behind and struck George in the eye, the back of the head, and "everywhere." George did not hear anyone calling for help.

¶ 6 George spoke to police, and later went to urgent care and to a hospital. She was treated for a bruised eye, swollen neck, and "messed up" finger. George did not return to work until February 2023. She identified photographs of her injuries taken between October 17 and October 21, 2022. These photographs, which were published and are included in the record on appeal, depict a woman with an eye injury.

¶ 7 George further testified that two Target surveillance videos truly and accurately depicted the events. George identified herself and defendant, who wore a black sweater, in the footage. These videos were published and are included in the record on appeal.

¶ 8    These videos depict George, wearing a red vest, assisting two women in the self-checkout area and speaking to a person wearing a "security" jacket. At one point, George gives the middle finger to one of the women, who moves forward while waving her arms. George pushes that woman away, and the second woman hits George in the face. George and the two women then fight. At one point, George is positioned between the two women as the security guard and another employee try to separate them. One of the women has her arms around George's neck. Multiple employees pull George and this woman to the side.

¶ 9    Next, defendant, who is wearing a black top, enters from the left side of the screen. When defendant approaches, a woman in red and a man in blue are on either side of George, who is bent over with a different woman's arms around her neck. Defendant strikes George in the back of the head, then pulls George's arm and strikes her again. Defendant and George are then pulled out of frame.

¶ 10    During cross-examination, George testified that she placed her arms around one of the women as to keep her balance, but was then pulled away. During redirect, George testified that defendant did not pull her away; rather, defendant approached at a run and started swinging. George did not hear anyone yelling for help, only "cursing."

¶ 11    Target security manager Jonathan Melchers testified that he observed a woman, whom he later learned was defendant's daughter, holding George "around the neck" and Target employees trying to deescalate the situation. As Melchers tried to free George's head, he heard screaming "from the back." A woman, whom Melchers identified in court as defendant, made "contact" with the back of George's head. Melchers separated defendant from George and the situation "calmed down." Melchers did not hear anyone calling for help.

¶ 12    Defendant testified that, on the morning of October 17, 2022, she was at Target with her adult daughters and two grandchildren. At one point, defendant took one of the grandchildren to the bathroom and her daughters proceeded to the self-checkout. When defendant exited the bathroom, she heard one of her daughters screaming, "you're not going to touch my sister." Defendant ran to see what was happening and saw George holding defendant's daughter by the neck and grabbing her hair. Defendant "reacted like a mother," because she "didn't know what was going on" and "protect[ed]" her daughter. She approached George from behind and grabbed her by the "hair in the back." At the same time, someone grabbed defendant's daughter. Defendant and George were then separated. Defendant denied hitting George in the face, but may have hit her "[f]rom the back."

¶ 13    During cross-examination, defendant testified that the daughter whom she heard scream was not engaged in the fight. Defendant's attention was on George, who was holding the other daughter's neck. At that "moment," defendant could not see her daughter's hands around George neck. As defendant approached, employees were trying to separate the women, but George and her daughter were "still in it."  Defendant was confused and said, "What the f*** is going on?" but did not tell anyone to stop. She grabbed George by the hair, which pulled George "off to the side." Defendant struck George on the back of the head at least once.

¶ 14    Defendant acknowledged telling a detective that she did not strike George and only grabbed George by the hair. Defendant was "confused" because "everything happened so fast." At the time, she did not know that George was a Target employee.

¶ 15    In closing argument, trial counsel argued that defendant defended her daughter based upon mistaken facts, *i.e.*, defendant observed mutual combat and was unsure who "started it." Counsel

concluded that defendant reasonably believed that she needed to protect her daughter from a perceived attack. The State responded that "motherhood" was not a legal defense and noted that defendant did not try to pull George away or to break up the fight; rather, she joined it.

¶ 16　In finding defendant guilty, the court noted that defendant came to the fight "late" and "in no way" attempted to aid her daughter and deescalate the situation. Rather, defendant "made the situation worse" by immediately trying to hit George.

¶ 17　Defendant filed a motion for a new trial, or in the alternative to reconsider the guilty finding, which the trial court denied. At sentencing, the trial court imposed a two-year term of probation. Defendant filed a motion to reconsider sentence, which was denied.

¶ 18　On appeal, defendant contends that the trial court erred in finding her guilty of aggravated battery when the State failed to disprove, beyond a reasonable doubt, that she had a reasonable belief in the need to protect her daughter from George.

¶ 19　When considering a challenge to the sufficiency of the evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Gray*, 2024 IL 127815, ¶ 20. It is the responsibility of the trier of fact to weigh, resolve conflicts in, and draw reasonable inferences from, the testimony and other evidence at trial. *People v. Harris*, 2018 IL 121932, ¶ 26. This court does not retry a defendant. *People v. Eubanks*, 2019 IL 123525, ¶ 95. A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of her guilt remains. *Harris*, 2018 IL 121932, ¶ 26.

¶ 20    To sustain a conviction for aggravated battery, the State was required to establish that defendant committed a battery and that the battery took place when defendant or George was on or about a public place of accommodation or amusement. See 720 ILCS 5/12-3.05(c) (West 2022). A battery occurs when a person "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2022).

¶ 21    Here, defendant does not contest whether the State established the elements of the offense beyond a reasonable doubt. Rather, she contends that the trial court erred in finding her guilty of aggravated battery, when, according to defendant, the State failed to disprove her affirmative defense, *i.e.*, that she acted in defense of others. According to defendant, she reasonably believed that she needed to use force to protect her daughter from George, when, as defendant approached, she saw her daughter being held around the neck, and defendant did not know who started the fight and why it began.

¶ 22    When a defendant raises an affirmative defense, the State has the burden to disprove the elements of that defense beyond a reasonable doubt. *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995). In other words, where the defendant argues that she acted in defense of others, the State must prove beyond a reasonable doubt that she did not. *People v. Lee*, 213 Ill. 2d 218, 224 (2004).

¶ 23    Defense of others is "an affirmative defense requiring some evidence that (1) unlawful force was threatened against defendant or others, (2) defendant was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) defendant subjectively believed a danger existed requiring the use of force applied, and (6) defendant's belief was objectively reasonable." *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 11; see also 720 ILCS 5/7-

1 (West 2022) ("A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force.").

¶ 24    "[T]he phrase 'reasonably believes' means 'that the person concerned, acting as a reasonable man, believes that the described facts exist.' " *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 55 (quoting 720 ILCS 5/2-19 (West 2008)). If the State negates any element of the defense, the defendant's claim fails. *Jeffries*, 164 Ill. 2d at 128. A trier of fact need not accept a defendant's contention that she acted in self-defense; it is a question of fact, and the court may consider the probability or improbability of the defendant's account, the circumstances surrounding the offense, and other witnesses' testimony. *People v. Young*, 347 Ill. App. 3d 909, 920 (2004).

¶ 25    In the case at bar, the aggravated battery charge was based on defendant striking George. Accordingly, we must determine whether a rational trier of fact could have found that, in doing so, defendant was not acting in the defense of others. Thus, "the entire course of events is relevant in considering this question." *People v. Williams*, 2025 IL App (1st) 240582, ¶ 47.

¶ 26    George testified that after a security guard accused two women of "ticket switching," George and one of the women exchanged profanities and lewd gestures. Then, George and the two woman engaged in a fight. At one point, defendant came from behind and struck George in the eye, the back of the head, and "everywhere." Melchers further testified that as he attempted to free George, he heard screaming "from the back" and defendant made "contact" with the back of George's head. George and Melchers testified consistently that they did not hear anyone calling for help.

¶ 27    Defendant, on the other hand, testified that she heard one of her daughters screaming that "you're not going to touch my sister" and then saw George holding the other daughter by the neck and grabbing that daughter's hair. Defendant acknowledged that, although employees were attempting to separate the women, George and her daughter were "still in it." Defendant reacted as a "mother" to protect her daughter by striking George at least once.

¶ 28    Here, the judge, as trier of fact, heard differing versions of how defendant became engaged in the fight. According to George and Melchers, defendant approached from the back and immediately struck George. Defendant testified that she acted to protect her child because she heard her screaming for help. She acknowledged that when she approached, the daughter, whom she heard scream, was standing to the side, employees were attempting to stop the fight, and defendant was confused as to what was occurring. Given that defendant was not present at the beginning of the fight and her decision to intervene despite not knowing the facts, a rational trier of fact could have determined that defendant was not acting in defense of others. See *id.* ¶ 53 (concluding that the trier of fact could have found that the defendant was not acting in defense of others given his "remoteness from the initial activity," decision to involve himself "in a situation in which he did not have all the facts" and "assumption" as to the identity of the "wrongdoer based on secondhand information").

¶ 29    In the case at bar, the trial court did not find defendant credible as evidenced by its guilty finding. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). Once the court found defendant's version of events, including that she acted because her one daughter screamed for help, incredible, it similarly discounted her testimony that she acted in

defense of her other daughter. The trial court was not "required to accept the defendant's version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53; see also *People v. Perez*, 100 Ill. App. 3d 901, 905 (1981) ("A jury is not required to accept as true the defendant's testimony concerning self-defense.").

¶ 30    Moreover, the evidence at trial established that defendant's adult daughters engaged in an argument with George that turned physical when one of the daughters struck George. By the time that defendant arrived, employees were trying to separate the women and end the fight. While defendant testified that she believed one daughter had called for help and that she saw George's hands around her other daughter's neck, a trier of fact need not disregard inferences which flow normally from the evidence or seek all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 31    Here, we cannot say that no rational trier of fact would have found that the State disproved defendant's affirmative defense of defense of others when the evidence established that defendant's daughters started the fight with George, defendant approached from the rear and immediately struck George, and two witnesses denied that anyone called for help. See *Taylor*, 2016 IL App (1st) 141251, ¶ 11. We reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that reasonable doubt of her guilt remains (*Harris*, 2018 IL 121932, ¶ 26). This is not one of those cases. Defendant's conviction for aggravated battery is therefore affirmed.

¶ 32    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.